**No. 2023-2348**

# United States Court of Appeals for the Federal Circuit

BILLJCO, LLC,
Appellant,

v.

APPLE INC.,
Appellee.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Proceeding No. IPR2022-00426

**BRIEF OF APPELLEE**


Douglas H. Hallward-Driemeier
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Phone: (202) 508-4600

Brian P. Lebow
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Phone: (212) 596-9000

James L. Davis, Jr.
James R. Batchelder
Christopher M. Bonny
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Phone: (650) 617-4000

*Counsel for Appellee Apple Inc.*

# ’804 PATENT CLAIM LANGUAGE AT ISSUE

1. A method by a sending data processing system, the method comprising:

accessing, by the sending data processing system, identity information for describing an originator identity associated with the sending data processing system;

accessing, by the sending data processing system, application information for an application in use at the sending data processing system;

accessing, by the sending data processing system, location information associated with the sending data processing system;

accessing, by the sending data processing system, reference information for further describing the location information associated with the sending data processing system;

preparing, by the sending data processing system, a broadcast unidirectional wireless data record including:

the identity information for describing the originator identity associated with the sending data processing system,

the application information for the application in use at the sending data processing system,

the location information associated with the sending data processing system, and

the reference information for further describing the location information associated with the sending data processing system;

maintaining, by the sending data processing system, a configuration for when to perform beaconing of the broadcast unidirectional wireless data record; and

transmitting, by the sending data processing system, the broadcast unidirectional wireless data record for receipt by a plurality of receiving mobile data processing systems in a wireless vicinity of the sending data processing system wherein the broadcast unidirectional wireless data record is beaconed by the sending data processing system in accordance with the configuration for when to perform beaconing, and wherein the broadcast unidirectional wireless data record includes at least:

the identity information for describing the originator identity associated with the sending data processing system wherein the identity information is for an alert determined by each receiving mobile data processing system of the plurality of receiving mobile data processing systems that the each receiving mobile data processing system is in the wireless vicinity of the sending data processing system,

the application information for the application in use at the sending data processing system,

the location information associated with the sending data processing system to be used by the each receiving mobile data processing system for determining their own location relative to the location information, and

the reference information for further describing the location information associated with the sending data processing system for describing to the each receiving mobile data processing system useful information associated with the sending data processing system.

10. The method of claim 1 wherein the broadcast unidirectional wireless data record includes information that is processed by the each receiving mobile data processing system for determining by the each receiving mobile data processing system what to present to a user interface.

11. The method of claim 1 wherein the broadcast unidirectional wireless data record includes at least one of:

information for a location technology used to locate the sending data processing system,

information for a triangulation measurement associated with the sending data processing system,

information for a time difference of arrival measurement associated with the sending data processing system,

information for a time of arrival measurement associated with the sending data processing system,

information for an angle of arrival measurement associated with the sending data processing system,

information for a yaw measurement associated with the sending data processing system,

information for a pitch measurement associated with the sending data processing system,

information for a roll measurement associated with the sending data processing system,

information for an accelerometer measurement associated with the sending data processing system,

information for a communications signal strength of a transmission associated with the sending data processing system,

information for a communications wave spectrum characteristic of a transmission associated with the sending data processing system,

information for a communications wave spectrum class of a transmission associated with the sending data processing system,

information for a communications wave spectrum frequency of a transmission associated with the sending data processing system,
information associated with a wireless data record received by the sending data processing system from a particular data processing system,
information maintained by an application associated with the sending data processing system,
information for an application in use at the sending data processing system,
information for an application context of an application associated with the sending data processing system,
information for a navigation Application Programming Interface associated with the sending data processing system,
information for a situational location associated with the sending data processing system,
information for a speed associated with the sending data processing system,
information for a heading associated with the sending data processing system,
time information associated with the sending data processing system,
information for a service condition associated with the sending data processing system,
information for a physical address associated with the sending data processing system,
information for a logical address associated with the sending data processing system,
information for a user configuration associated with the sending data processing system,
information for monitoring movement of the sending data processing system,
information for an identifier associated with the sending data processing system, or
information in accordance with one or more permissions configured by a user associated with the sending data processing system.

12. The method of claim 1 wherein the broadcast unidirectional wireless data record includes information that can be processed according to a user configured permission maintained at the each receiving mobile data processing system.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-2348

**Short Case Caption** BillJCo, LLC v. Apple Inc.

**Filing Party/Entity** Apple Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/22/2024

Signature: /s/ James L. Davis, Jr.

Name: James L. Davis, Jr.

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Larissa S. Bifano, DLA Piper LLP | Joseph W. Wolfe, DLA Piper LLP | Zachary Conrad, DLA Piper LLP |
| Jonathan Hicks, DLA Piper LLP | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

’804 PATENT CLAIM LANGUAGE AT ISSUE ........................................... ii

CERTIFICATE OF INTEREST ........................................................ v

TABLE OF AUTHORITIES ............................................................ xi

STATEMENT WITH RESPECT TO ORAL ARGUMENT ............................... xiv

STATEMENT OF RELATED CASES ................................................. xv

STATEMENT OF JURISDICTION ...................................................... 1

INTRODUCTION ........................................................................ 2

STATEMENT OF THE ISSUES ........................................................ 4

STATEMENT OF THE CASE ........................................................... 5

A. The Prior Art Discloses Beaconing Of Location Information That The Receiving Device Uses To Determine Its Location Relative To The Sending Device .......... 5

1. Himmelstein ........................................................ 5

2. Myr ................................................................... 7

B. The ’804 Patent Similarly Discloses Beaconing Of Location Information That The Receiving Device Uses To Determine Its Location Relative To The Sending Device ................................................................ 7

C. Apple Filed A Petition For Inter Partes Review, And The Board Held The ’804 Challenged Claims Unpatentable ............ 9

SUMMARY OF THE ARGUMENT ................................................... 15

ARGUMENT ............................................................................. 18

I. Standard Of Review ....................................................... 18

II. The Board Correctly Rejected BillJCo’s Claim Construction Arguments For The ’804 Patent ........................................ 19

**Table of Contents
(continued)**


A. The Board Correctly Rejected BillJCo's Request To Narrowly Construe The "Transmitting…" Term To Require Transmission Directly To The Wireless Device In The Vicinity Of The Sending Data Processing System .......19

B. The Board Correctly Rejected BillJCo's Request To Narrowly Construe "Beaconing" As Transmitting With The Intent Of Locating The Transmitter..................................25

III. The Factual Findings Underlying The Board's Conclusion That All Challenged Claims Of The '804 Patent Are Obvious Over Himmelstein In View of Myr Are Supported By Substantial Evidence ..........................................................................30

A. The Board's Findings That Himmelstein Teaches "Transmitting … The Broadcast Unidirectional Wireless Data Record For Receipt By A Plurality Of Receiving Mobile Data Processing Systems In A Wireless Vicinity Of The Sending Data Processing System" Are Supported By Substantial Evidence ...........................................................30

1. The Board Found Himmelstein Discloses The "Transmitting" Limitation Under Either Construction.....................................................................31

2. BillJCo's Arguments On Appeal Depend On Its Legally Erroneous Construction and Ignore The Board's Finding Under BillJCo's Construction .............34

B. The Board's Finding That Himmelstein In View Of Myr Renders Obvious "Beaconing" Is Supported By Substantial Evidence ...............................................................37

C. The Board's Findings That A POSA Would Have Been Motivated To Apply Myr's Teachings To Himmelstein Are Supported By Substantial Evidence..................................45

IV. The Board's Findings On Secondary Considerations Are Supported By Substantial Evidence ....................................................50

A. The Board's Finding That BillJCo Failed To Show Copying Is Supported By Substantial Evidence .......................52

**Table of Contents**
**(continued)**

B. The Board's Finding That BillJCo Failed To Show Commercial Success Tied To The Patent Is Supported By Substantial Evidence ....54

C. The Board's Finding That BillJCo Failed To Show Sufficient Nexus For Licensing Is Supported By Substantial Evidence ....56

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ....57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Antor Media Corp.*,
689 F.3d 1282 (Fed. Cir. 2012) ....................56, 57

*Axonics, Inc. v. Medtronic, Inc.*,
75 F.4th 1374 (Fed. Cir. 2023) ....................44

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*,
229 F.3d 1120 (Fed. Cir. 2000) ....................51

*In re Chapman*,
595 F.3d 1330 (Fed. Cir. 2010) ....................18

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
4 F.4th 1370 (Fed. Cir. 2021) ....................54, 55

*Consol. Edison Co. of N.Y. v. N.L.R.B.*,
305 U.S. 197 (1938)....................18

*In re Cuozzo Speed Techs., LLC*,
793 F.3d 1268 (Fed. Cir. 2015) ....................18

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) ....................53

*EWP Corp. v. Reliance Universal Inc.*,
755 F.2d 898 (Fed. Cir. 1985) ....................56

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) ....................52

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ....................19

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
977 F.3d 1212 (Fed. Cir. 2020) ....................29

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 784 (Fed. Cir. 2021) ....................47

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
392 F.3d 1317 (Fed. Cir. 2004) ....................56

*J.T. Eaton & Co. v. Atl. Paste & Glue Co.*,
106 F.3d 1563 (Fed. Cir. 1997) ....................54, 55

*KSR Intern. Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................46, 49

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
941 F.3d 1133 (Fed. Cir. 2019) ....................53, 54

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................29

*Resonate Inc. v. Alteon Websystems, Inc.*,
338 F.3d 1360 (Fed. Cir. 2003) ....................21

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
225 F.3d 1349 (Fed. Cir. 2000) ....................56

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
601 F.3d 1319 (Fed. Cir. 2010) ....................21

*Skky, Inc. v. MindGeek, s.a.r.l.*,
859 F.3d 1014 (Fed. Cir. 2017) ....................44

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
8 F.4th 1349 (Fed. Cir. 2021) ....................57

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999) ....................19, 25, 30

*Volvo Penta of the Ams., LLC v. Brunswick Corp.*,
81 F.4th 1202 (Fed. Cir. 2023) ....................51, 52

*Wyers v. Master Lock Co.*,
616 F.3d 1231 (Fed. Cir. 2010) ....................52

**Statutes**

5 U.S.C. § 706....................18

28 U.S.C. § 1295(a)(4)(A) ....................1

35 U.S.C. § 141 .......................................................................................... 1

35 U.S.C. § 319 .......................................................................................... 1

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a), Appellee Apple Inc. ("Apple") respectfully requests oral argument in this matter. This matter meets the standards of Rule 34(a)(2) for oral argument, and Apple believes that oral argument would significantly aid the Court's decisional process.

## STATEMENT OF RELATED CASES

Apple's counsel is unaware of any related proceedings within the meaning of Federal Circuit Rule 47.5(a). Pursuant to Federal Circuit Rule 47.5(b), Apple states that the following cases may be directly affected by this Court's decision in the pending appeal:

- *BillJCo, LLC v. Apple, Inc.*, Case No. 4:22-cv-03201 (N.D. Cal.).
- *BillJCo, LLC v. Apple Inc.*, CAFC, Case No. 23-2188 (United States Patent and Trademark Office, IPR2022-00129).
- *BillJCo, LLC v. Apple Inc.*, CAFC, Case Nos. 23-2189, 23-2190 (United States Patent and Trademark Office, IPR2022-00131, IPR2022-00310).
- *BillJCo, LLC v. Apple Inc.*, CAFC, Case No. 23-2417 (United States Patent and Trademark Office, IPR2022-00427).

## STATEMENT OF JURISDICTION

This is an appeal pursuant to 35 U.S.C. § 141(c) from the Final Written Decision under 35 U.S.C. § 318(a) of the Patent Trial and Appeal Board of the United States Patent & Trademark Office entered on June 27, 2023, in *Inter Partes* Review No. IPR2022-00426 (Paper 41). This Court therefore has jurisdiction over this appeal under 35 U.S.C. §§ 141 and 319 and 28 U.S.C. § 1295(a)(4)(A).

## INTRODUCTION

This appeal concerns whether substantial evidence supports the Board's factual findings underlying its determinations that all challenged claims of U.S. Patent No. 8,761,804 (the "'804 patent") are unpatentable as obvious over Himmelstein in view of Myr under both the Board's adopted and Appellant BillJCo's proposed constructions.

This Court should affirm the Board's Final Written Decision as to the disputed limitations for two independent reasons. First, BillJCo's proposed constructions for both the "transmitting" and "beaconing" terms are devoid of support from the intrinsic record and should be rejected. Under the plain and ordinary meaning of these terms, which the Board adopted, there is no dispute that the limitations are met by the prior art. Thus, if the Court agrees with the Board's construction of the two appealed terms, it can affirm on that basis alone.

Second, even under BillJCo's constructions, the Board properly rejected BillJCo's arguments as to these terms and found the Challenged Claims unpatentable, which is an independent ground of affirmance. Under BillJCo's construction of "transmitting … the broadcast unidirectional wireless data record for receipt by a plurality of receiving mobile data processing systems in a wireless vicinity of the sending data processing system" as requiring transmission "directly" to wireless devices, the Board correctly found that Himmelstein teaches this

limitation. Himmelstein teaches that "mobile units 16 can talk *directly* to other mobile units 16 *without the intervention of*" a base station.[1] In addition, under BillJCo's construction of "beaconing" as requiring transmitting with the intent of locating the transmitter, the Board correctly found that Himmelstein in view of Myr renders this obvious based on Himmelstein's *undisputed* teaching of transmitting location information that is used by the receiving mobile device for determining its location relative to the sending device. If the Court agrees that substantial evidence supports these alternative rulings, the Court need not reach the claim construction issues.

The Board also properly rejected each of BillJCo's motivation to combine arguments, supporting that decision with extensive analysis and citation to both the prior art and the testimony of Apple's expert, Dr. Long. Finally, the Board properly rejected BillJCo's secondary consideration arguments, as there was insufficient evidence of copying or commercial success in addition to insufficient evidence of nexus to the claims.

Because the Board did not err in rejecting BillJCo's proposed constructions and because substantial evidence supports the Board's fact findings, Apple respectfully asks this Court to affirm the Board's determinations that claims 1 and 10-12 of the '804 Patent are unpatentable.

[1] All emphasis added unless otherwise noted.

## STATEMENT OF THE ISSUES

Apple provides the following counter-statement of the issues:

1. Whether the Board correctly rejected BillJCo's claim construction arguments for the challenged claims of the '804 patent, where BillJCo attempts to limit the "transmitting" term to direct communication without an intervening device and "beaconing" to a transmission that is intended to direct attention to the transmitter.

2. Whether substantial evidence supports the Board's findings that Himmelstein in view of Myr renders obvious the challenged claims of the '804 patent under both the Board's adopted and BillJCo's proposed constructions.

3. Whether substantial evidence supports the Board's findings that BillJCo's evidence of secondary considerations of non-obviousness is entitled to little weight because BillJCo failed show sufficient evidence of copying, commercial success, and nexus.

## STATEMENT OF THE CASE

### A. The Prior Art Discloses Beaconing Of Location Information That The Receiving Device Uses To Determine Its Location Relative To The Sending Device

#### 1. *Himmelstein*

Himmelstein in view of Myr is the prior art ground at issue in this appeal. Himmelstein[2] relates to a mobile communication system that allows mobile vehicles to communicate with neighboring vehicles and roadside communication networks. Appx1761 (Abstract), Appx1770 (1:18-21). Figure 1, reproduced below, shows Himmelstein's mobile communication system:




FIG. 1

Appx1763 (Fig. 1), Appx1770 (2:59-60).

[2] "Himmelstein" refers to U.S. Patent No. 7,123,926 to Himmelstein, filed on November 10, 2003 and issued on October 17, 2006. Appx1761.

As shown in Figure 1, Himmelstein's vehicle communication system 10 includes "one or more base stations 14, each of which is in wireless communication with a plurality of remote units 16." Appx1770 (2:60-63). Although the remote units 16 may be fixed or mobile, Himmelstein refers to them "for simplicity as mobile units 16." *Id.* (2:63-65). "Each mobile unit 16 can communicate with another mobile unit 16, the closest base station 14, or the base station 14." Appx1770-1771 (2:65-3:1).

Himmelstein teaches that communications between mobile units 16 "are accomplished through a stream of transmitted communication packets 50." Appx1771 (4:31-33). Each communication packet 50 includes a header 51 and a payload 53. *Id*. (4:33-35). Header 51 includes "a plurality of information fields" that are "categorized by three different functional groups: 1) transmission administrative information 55; 2) sender information 56; and 3) receiver information 57." *Id*. (4:52-56).

Himmelstein discloses that the fields associated with the sender portion of the header include "identification number 71, position 72, speed 73, acceleration or deceleration 74, direction 75, origination 76, and destination 77." Appx1772 (6:5-10). Because this "detailed information is available in the packet header 51, the system 10 can provide the … location of the other vehicle in relation to the present vehicle." Appx1774 (10:26-29).

**2. *Myr***

Myr[3] relates to a "traffic information gathering system" that uses cellular phone networks for intelligent control of traffic signals. Appx1801 (¶1). The traffic information gathering system "utilizes real time cell phone position data for reconstructing concurrent traffic conditions." Appx1802 (¶37). This is accomplished by "measuring the signals traveling between a moving cell phone and a fixed set of base stations." Appx1802 (¶36).

Myr discloses periodically beaconing records from the cell phones to capture traffic data based on the location of cellphones. Appx 1804 (¶92). According to Myr, "it is time and cost effective if the data are received in the form of periodic data packets in real time, such as, 1 to 3 minutes, for example." *Id*.

**B. The '804 Patent Similarly Discloses Beaconing Of Location Information That The Receiving Device Uses To Determine Its Location Relative To The Sending Device**

The earliest application leading to the '804 patent was filed more than four years after Himmelstein's filing date and more than six years after Myr's filing date. Appx0033. As with Himmelstein and Myr, the '804 patent relates to "location based services for mobile data processing." Appx0108 (1:20-24). The '804 patent describes how the rise of the internet led to a number of new service offerings,

[3] "Myr" refers to U.S. Patent Application Publication 2003/0014181 to Myr, filed on July 10, 2001 and published on January 16, 2003. Appx1780.

including services provided to "mobile data processing systems." *Id*. (1:30-65). Examples of mobile data processing systems include cell phones, laptops, and personal computers. Appx0109 (3:7-17).

The '804 patent states that "[i]t is inevitable that as users are hungry for more features and functionality on their mobile data processing systems, processing will be moved closer to the device for optimal performance and infrastructure cost savings." Appx0108 (2:23-26). The '804 patent explains that "[a] reasonable requirement is to push intelligence out to the mobile data processing systems themselves, for example, in knowing their own locations and perhaps the locations of other nearby mobile data processing systems." *Id*. (2:59-62).

Claim 1 of the '804 patent (the only independent claim at issue in this appeal) is exemplary and describes a method performed by a "sending data processing system" with the steps of accessing several types of information including "location information associated with the sending data processing system," preparing a "broadcast unidirectional wireless data record" that includes that location information, maintaining "a configuration for when to perform beaconing" of the broadcast unidirectional wireless data record, and transmitting the broadcast unidirectional wireless data record "wherein the broadcast unidirectional wireless data record is beaconed by the sending data processing system in accordance with the configuration for when to perform beaconing." Appx0166 (117:60-118:32). The

claim further recites that the location information is "to be used by the each receiving mobile data processing system for determining their own location relative to the location information." *Id*. (118:43-46).

### C. Apple Filed A Petition For Inter Partes Review, And The Board Held The '804 Challenged Claims Unpatentable

In 2021, BillJCo sued Apple for alleged infringement of the '804 patent and others patents. Appx4058 (Compl. ¶¶ 1-2, *BillJCo, LLC v. Apple Inc.*, No. 6:21-cv-00528 (W.D. Tex. May 25, 2021), ECF No. 1). Apple responded by filing a petition for *inter partes* review challenging claims 1 and 10-12 of the '804 patent ("Challenged Claims"), and the Board instituted review. The Board addressed six issues that are relevant to this appeal, with two relating to claim construction, three relating to the Board's findings as to the disclosures of the prior art and motivation to combine, and the final issue being alleged evidence of secondary considerations.

First, the Board addressed BillJCo's argument that the "transmitting…" term in the Challenged Claims should be construed as requiring transmission "directly" to the mobile device. Appx0008. The Challenged Claims recite "transmitting … the broadcast unidirectional wireless data record for receipt by a plurality of receiving mobile data processing systems in a wireless vicinity of the sending data processing system." Appx0166 (118:25-28). BillJCo argued that this requires that "the wireless data record … is transmitted by the sending data processing system via a unidirectional beacon *directly* to the wireless devices in the vicinity of the sending

data processing system." Appx0444-Appx0445 (POR). In response, Apple explained that BillJCo's construction contradicts the claim language, and that the term should be interpreted according to its plain and ordinary meaning. Appx0552-Appx0553 (Reply). The Board agreed with Apple, finding that "neither the at-issue claim language nor the specification precludes a transmission to the receiving system through an intermediary." Appx0008. The Board did not further construe the term because its rejection of BillJCo's proposal resolved the parties' dispute. *Id.*

Second, the Board addressed BillJCo's argument that "beaconing" in the Challenged Claims should be construed as "transmitting with the intent of locating the transmitter." Appx0006-Appx0007. The Challenged Claims recite "maintaining, by the sending data processing system, a configuration for when to perform *beaconing* of the broadcast unidirectional wireless data record" and that the wireless data record is "*beaconed* by the sending data processing system in accordance with the configuration for when to perform *beaconing*." Appx0166 (118:21-31). BillJCo put forth a variety of wording variations for its proposed construction, including that "beaconing" is "designed to attract attention to a specific location" (Appx0442 (POR)), is "a transmission sent with the intent that it can be used to be [sic] locate the transmitter" (Appx0443 (POR)), "is a transmission made to indicate a location of the transmitter" (*id.*), and is "designed to attract attention to a transmitter" (Appx0581-Appx0582 (PO Sur-Reply)). In response, Apple

explained that there is no intrinsic evidence to support BillJCo's proposal, and that the patent describes beaconing similar to broadcasting. Appx0549-Appx0552 (Reply) (citing Appx0119 (24:19-26)). The Board agreed with Apple that the plain meaning of beaconing is not limited to locating, and additionally noted that claim 1 already has language that addresses the location-related features. Appx0006-Appx0007. For example, claim 1 recites that the beaconed broadcast includes "location information associated with the sending data processing system to be used by the each receiving mobile data processing system for determining their own location relative to the location information and the reference information for further describing the location information associated with the sending data processing system." Appx0166 (118:43-49). After rejecting BillJCo's construction, the Board determined that "no additional express construction is necessary to determine patentability." Appx0007.

Third, the Board addressed Himmelstein's teaching of the "transmitting…" term. Appx0011-Appx0012. Apple explained that Himmelstein discloses broadcasting the packet containing the broadcast unidirectional wireless data record to multiple mobile devices in the vicinity of the sending system, including in a piconet embodiment "without the intervention of the base station." Appx0225-Appx0226 (Petition); Appx1770 (2:65-3:1), Appx1773 (7:16-19, 7:48-52) (Himmelstein); Appx1739-1740 (¶97) (Long Decl.). In response, BillJCo argued

that Himmelstein does not teach the "transmitting" term under BillJCo's proposed construction because all communications allegedly "are processed through and controlled by a base station." Appx0449-Appx0454 (POR). The Board first found that BillJCo's argument is premised on the proposed construction rejected by the Board. Appx0012. The Board also found that Himmelstein's piconet embodiment teaches transmitting directly to the wireless devices. Appx0012. Accordingly, the Board "agree[d] with Petitioner that Himmelstein's piconet embodiment teaches 'transmitting … the broadcast unidirectional wireless data record for receipt by a plurality of receiving mobile data processing system[s],' as claim 1 requires." Appx0012 (first alteration added).

Fourth, the Board addressed how the teachings of Himmelstein in view of Myr render obvious "beaconing." Appx0012-Appx0014. Apple explained how Himmelstein teaches broadcasting a packet with location information to multiple mobile devices, and Myr teaches periodically beaconing a signal, including when to perform beaconing. Appx0205-0206, Appx0225-0226 (Petition); Appx1770-1771 (2:65–3:1), Appx1773 (7:16–19, 7:48–52) (Himmelstein); Appx1804 (¶¶92, 96) (Myr); Appx1739-1740 (¶98) (Long Decl.). In response, BillJCo argued that the combination of Himmelstein in view of Myr does not render obvious "beaconing" under BillJCo's proposed construction because there allegedly is "no disclosure in Myr of a signal that is designed to attract attention to a specific location or that is

intended to indicate the position of something." Appx0446-Appx0449 (POR). The Board first found that BillJCo's argument is premised on its proposed construction rejected by the Board. Appx0013. The Board also found that Himmelstein in view of Myr renders obvious beaconing "even under Patent Owner's construction." *Id*. Specifically, the Board found that Himmelstein teaches transmitting the sending station's location information, which then "may be used by each receiving mobile data processing system for determining their own location relative to the location information." *Id*. (citing Appx1774 (10:26-29) (Himmelstein); Appx0230 (Petition)). Thus, "even if Patent Owner is correct in its characterization of Myr, … it is undisputed that Himmelstein teaches the alleged missing feature from Myr and the only feature Petitioner relies on Myr for is configured, periodic transmission." Appx0013. Accordingly, the Board "agree[d] with Petitioner that together, Himmelstein and Myr teach claim 1's 'beaconing' a broadcast unidirectional wireless data record according to a maintained configuration for when to do so, as claim 1 requires." Appx0013-Appx0014.

Fifth, the Board addressed BillJCo's arguments that a person of ordinary skill in the art ("POSA") would not have been motivated to apply Myr's teachings to Himmelstein. Appx0014-Appx0016. Apple's expert, Dr. Long, explained that a POSA would have been motivated to save power in the Himmelstein system by using the teaching in Myr to periodically beacon the traffic data signals. Appx1717

(¶58) (Long Decl.); Appx0205 (Petition); *see also* Appx1716-Appx1717 (¶¶55-57), Appx1738 (¶95), Appx1740 (¶98) (Long Decl.); Appx0203-Appx0205, Appx0224, Appx0226 (Petition). In response, BillJCo argued that the uses of Himmelstein and Myr are different, conserving power is not needed for Himmelstein, and the prior art teaches away from the combination. Appx0454-Appx0457 (POR). The Board addressed and rejected each of BillJCo's arguments, and found that "[g]iven Petitioner's explanation that Myr's periodic transmission would be a time- and cost-effective method of transmission in Himmelstein's system, Petitioner has articulated sufficient reasoning with rational underpinning to support the legal conclusion that its proffered combination would have been obvious." Appx0014-Appx0016. The Board further found that applying Myr's periodic transmission to Himmelstein's mobile units was obvious as it applies a known technique to a known device to yield a predictable result of a mobile unit that periodically transmits information. *Id.*

Sixth, and finally, the Board addressed BillJCo's alleged evidence of secondary considerations. In arguing that Apple copied the '804 patent's technology, BillJCo pointed solely to the timing of (1) unsolicited offers to license technology between 2010 and 2014 before the application that led to the '804 patent was filed, and (2) the 2013 release of an allegedly infringing product by Apple. Appx0459-Appx00461 (POR). Apple explained that this circumstantial evidence was insufficient to show copying under the applicable law, and the Board agreed.

Appx0017-Appx0018 (FWD); Appx0563-Appx0566 (Reply). BillJCo also claimed commercial success based on Apple's touting of features of its products and based on BillJCo's licenses. Appx0464-0466 (POR). Apple noted that BillJCo submitted no sales information or other evidence to show commercial success—touting of features is irrelevant—and that the identified licenses all concern over thirty patents with no indication of the relative importance of the '804 patent; and the Board agreed. Appx0018-Appx0019 (FWD); Appx0566-Appx0568 (Reply).

BillJCo did not dispute that Himmelstein and Myr taught the other elements of the Challenged Claims, and the Board found Apple's evidence sufficient. Appx0019-Appx0021. Based on its findings, the Board determined that Apple demonstrated by a preponderance of the evidence that the Challenged Claims are unpatentable as obvious over Himmelstein in view of Myr. Appx0020-Appx0021.

## SUMMARY OF THE ARGUMENT

For two independent reasons, this Court should affirm the Board's decision for the "transmitting" and "beaconing" terms. First, the Board's claim construction determinations are consistent with the intrinsic evidence and should be affirmed. Under the plain and ordinary meaning of the "transmitting" and "beaconing" terms as adopted by the Board, there is no dispute that the limitations are met by the prior art. Second, and alternatively, the Court need not reach these claim construction issues because substantial evidence supports the factual findings underlying the

Board's determinations of unpatentability of all Challenged Claims under BillJCo's rejected constructions.

BillJCo's narrow constructions are unsupported by the intrinsic record. First, BillJCo proposes construing "transmitting … the broadcast unidirectional wireless data record for receipt by a plurality of receiving mobile data processing systems in a wireless vicinity of the sending data processing system" as requiring transmission "*directly*" to the mobile device—*i.e.*, without passing through an intermediary device. However, the claim language and specification provide no support for importing such a requirement, and BillJCo's arguments are primarily based on its mistaken view that using an "intermediary" is incompatible with various portions of this claim limitation.

BillJCo also proposes narrowly construing "beaconing" as "a transmission that is intended to direct attention to the transmitter" (or, as BillJCo previously explained, "transmitting with the intent of locating the transmitter"), but the claim already recites separate location-related limitations where they were intended. Moreover, the term "beaconing" by itself is nowhere described as limited to locating or directing attention to the transmitter. BillJCo's proposed construction is also vague and ambiguous because it introduces the concepts of "intent" and "attention."

Substantial evidence supports the Board's findings that Himmelstein teaches the "transmitting" term under both the Board's adopted and BillJCo's rejected

construction. First, there is no dispute that Himmelstein teaches this term under the Board's construction. Second, under BillJCo's proposed construction, which requires transmission "directly" to the mobile device, Himmelstein discloses a piconet architecture in which mobile units "talk directly" to other mobile units "without the intervention of the base stations" (*i.e.*, without an intermediary).

Substantial evidence also supports the Board's findings that Himmelstein in view of Myr renders obvious "beaconing" under both the Board's adopted and BillJCo's rejected construction. First, BillJCo does not dispute that Himmelstein in view of Myr renders obvious this term under the Board's construction. Second, under BillJCo's proposed construction of "beaconing" ("a transmission that is intended to direct attention to the transmitter"), Himmelstein teaches that the sending device transmits location information that is used by the receiving mobile devices for determining their location relative to the sending device. Indeed, these same teachings of Himmelstein were presented in the Petition for the actual location-related elements of the claims, and BillJCo does not dispute them.

Substantial evidence also supports the Board's findings on motivation to apply the teachings of Myr to Himmelstein. After crediting the testimony of Apple's expert, Dr. Long, the Board provided two independent bases for applying Myr's teaching to Himmelstein: (1) Myr's periodic transmission would be a time- and cost-effective method of transmission in Himmelstein's system, and (2) the combination

would have been obvious because it amounts to no more than using a known technique (Myr's periodic transmission) in a known device (Himmelstein's mobile units), yielding the predictable result of a mobile unit that periodically transmits information.

Finally, the Board weighed the purported evidence of secondary considerations, and properly concluded it was insufficient to show non-obviousness.

## ARGUMENT

### I. Standard Of Review

Claim construction is reviewed do novo and underlying factual determinations concerning extrinsic evidence are reviewed for substantial evidence. *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279-80 (Fed. Cir. 2015), *aff'd sub nom. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016).

The factual findings underlying the Board's conclusions of obviousness are reviewed for substantial evidence. *See, e.g., In re Cuozzo*, 793 F.3d at 1280; *In re Chapman*, 595 F.3d 1330, 1336-37 (Fed. Cir. 2010); 5 U.S.C. § 706. Thus, the Board's factual findings—including its findings on the scope and content of the prior art, the differences between the claimed invention and the prior art, and motivation to combine—must be sustained so long as they are based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol.*

*Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000).

## II. The Board Correctly Rejected BillJCo's Claim Construction Arguments For The '804 Patent

### A. The Board Correctly Rejected BillJCo's Request To Narrowly Construe The "Transmitting…" Term To Require Transmission Directly To The Wireless Device In The Vicinity Of The Sending Data Processing System

The Board correctly rejected BillJCo's request to narrowly construe the "transmitting…" term as requiring transmission "*directly*" (e.g., via a peer-to-peer communication) to the mobile device in the vicinity of the sending data processing system. Because that determination resolves the parties' dispute for this term for purposes of the IPR, no further construction is necessary. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").

An affirmance of the Board's claim construction determination would dispose of all issues for this limitation because BillJCo does not dispute that the term is met by the prior art under the Board's construction. Alternatively, the Court need not reach this claim construction issue because the Board found that the prior art teaches this limitation even under BillJCo's proposed construction, and its finding is supported by substantial evidence. *See infra* §III.A.

The Challenged Claims recite "transmitting, by the sending data processing system, the broadcast unidirectional wireless data record for receipt by a plurality of receiving mobile data processing systems in a wireless vicinity of the sending data processing system." Appx0166 (118:24-28). BillJCo asks this Court to construe this term as requiring transmitting "*directly* from the sending data processing system to the mobile receiving data systems in the vicinity of the sending data processing system" (Blue Br. at 28; *see also* Blue Br. at 14-28), but the intrinsic evidence does not support precluding transmission to the receiving system through an intermediary.

Starting with the claim language, nothing in the claims hints at any requirement of direct communication. The claim term requires merely that the broadcast unidirectional wireless data record is transmitted for receipt by the receiving mobile data processing systems in a wireless vicinity of the sending device. As long as those requirements are met, it is irrelevant whether an intermediary device is used along the communication path. The specification likewise provides no support for interpreting the claim as requiring direct transmission to the receiving device, nor does BillJCo cite any such support.

BillJCo first argues that nothing in the claim "says that the data may be transmitted through an intermediary," "suggests the inclusion of an intermediary," or "hints at the idea that some other device receives the data from the sending device, and then retransmits it to the mobile devices" (Blue Br. at 19), but these arguments

would improperly flip the claim construction process on its head. As this Court held when vacating a district court's judgment for legal error in its claim construction, "Courts may not rewrite claim language based on what has been omitted from a claim" such as "patentee's apparent choice not to specify a transmission path from the server to the client." *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1365 (Fed. Cir. 2003) (citations omitted). As in *Resonate*, here the claim "specifies nothing regarding the transmission path over which the requested data must be sent" and instead merely specifies the start and end point. *Id*. Accordingly, it would be error "to add a limitation that the requested resource be transmitted directly to the client." *Id*.; *see also SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1330 (Fed. Cir. 2010) (construing limitations as encompassing direct *and* indirect transmitting where "[n]either the claim language nor the patent specification requires that the communication/transmission be direct").

BillJCo argues that the claim recites "unidirectional" and "including an intermediary creates multiple directions"—one direction "from the sending device to the intermediary" and a second direction "from the intermediary device to the mobile device" (Blue Br. at 19-20)—but the terms "unidirectional" and "bidirectional" are used to indicate whether transmission is in both directions (*e.g.*, a bidirectional exchange, A to B and B to A), or just one direction (*e.g.*, a broadcast away from the device, A to B), not whether an intermediary is involved. For

example, the specification explains that a single path can be "potentially bidirectional, but certainly at least unidirectional." Appx0116 (18:4-8). The specification also contrasts a "unidirectional transmission" with a "bidirectional … exchange." Appx0151 (88:49-52). Thus, the patent uses "unidirectional" to distinguish a broadcast from bidirectional transmissions/exchanges. Returning to BillJCo's example with an intermediary device, transmissions "from the sending device to the intermediary" (A to B) and "from the intermediary device to the mobile device" (B to C) are both along the same transmission direction away from A and toward C, and thus there is still a unidirectional transmission even when sending through an intermediary device. In contrast, a bidirectional transmission with an intermediary device would involve transmitting both from A to B to C and from C to B to A.

BillJCo further argues that an intermediary device "could" be placed at the edge of the "wireless vicinity" of the sending device and transmit to mobile devices outside the wireless vicinity, rendering the phrase "in a wireless vicinity of the sending data processing system" meaningless because the "transmission range of the sending data system would be unlimited" (Blue Br. at 20-21), but the hypothetical that BillJCo describes—with the receiving mobile device outside the wireless vicinity—already fails to meet the claims. The claims require "transmitting … for receipt by a plurality of receiving mobile data processing systems in a wireless

vicinity of the sending data processing system." Appx0166 (118:24-28). It makes no sense to focus on a limited hypothetical that is outside the claim scope when considering the use of an intermediary device. The relevant situation is using an intermediary, such as a base station, to transmit to a receiving device in the wireless vicinity of the sending device. BillJCo's next argument—that the claimed "wireless data record" with "location information associated with the sending data processing system" makes sense only if the record is intended to be "transmitted to mobile devices physically near the sender" (Blue Br. at 21)—introduces a concept of physical nearness that is absent from the claims and specification. To the extent that BillJCo is equating "physically near" with "wireless vicinity," this argument fails for the same reason—the claims already require "receipt by a plurality of receiving mobile data processing systems in a wireless vicinity." Appx0166 (118:24-28).

BillJCo argues that the term "wireless" in "wireless data record" does not permit the transmission to pass through an intermediary device (Blue Br. at 22), but even with an intermediary, the transmissions between each device and the intermediary are wireless. Any processing that occurs in the intermediary device does not destroy the "wireless" nature of the "wireless data record" any more than the processing that occurs in the sending device prior to sending, or in the receiving device upon receipt.

BillJCo also misleadingly argues that if an intermediary device is used, the transmission for receipt by the receiving devices "would not be by the sending data processing system, as is claimed," because the intermediary transmits the data to the receiving device. Blue Br. at 22. BillJCo's argument ignores that even when an intermediary device is used, there is a transmission "by the sending data processing system" that is "for receipt by a plurality of receiving mobile data processing systems"—it just passes through another device along the way.

Finally, BillJCo's arguments based on the specification likewise fail to support its proposed construction. BillJCo argues that the specification describes an architecture without a central server and "there are no embodiments in the specification where an intermediary or middleman system is used other than the prior art" (Blue Br. at 23-25), but the cited passages merely state that a middleman is not *required*, not that it cannot be used with the invention. For example, the specification states that the alleged invention enables distributed applications "whereby a server is not required to middleman social interactions between the MSs." Appx0109 (4:15-21); *see also* Appx0109 (4:36-41) ("without the necessity of having a service"). None of BillJCo's cited disclosures states that the alleged invention cannot be used with a middleman or intervening device. *See, e.g.*, Appx0108-Appx0109 (1:39-65, 2:59-3:2, 4:15-21, 4:36-41), Appx0116 (17:48-55), Appx0143 (71:1-25), Appx0039 (Fig. 1B), Appx0082 (Fig. 13A).

For the foregoing reasons, the Board correctly rejected BillJCo's request to narrowly construe the "transmitting" term as requiring transmitting directly from the sending data processing system to the mobile receiving data system in the vicinity of the sending data processing system. No further construction of the term is needed because BillJCo's only substantive argument relating to this limitation is that the prior art allegedly uses an intermediate device. *See* §III.A, *infra*; *Vivid Techs.*, 200 F.3d at 803.

### B. The Board Correctly Rejected BillJCo's Request To Narrowly Construe "Beaconing" As Transmitting With The Intent Of Locating The Transmitter

The Board correctly rejected BillJCo's request to narrowly construe "beaconing" as transmitting with the intent of locating the transmitter. BillJCo's formulation of its proposed construction on appeal appears to be "a transmission that is intended to direct attention to the transmitter." Blue Br. at 39. While BillJCo in the proceeding below stated numerous slight variations of its proposed construction, BillJCo agrees its appeal construction is equivalent to "transmitting with the intent of locating the transmitter" (the construction rejected by the Board). Appx0442-Appx0443 (POR); Appx0580 (PO Sur-Reply); Appx0006-Appx0007 (FWD). Because the Board's determination resolves the parties' dispute for this term for purposes of the IPR, no further construction is necessary. *Vivid Techs.*, 200 F.3d at 803.

As with the "transmitting" term addressed above, an affirmance of the Board's claim construction determination for "beaconing" is an independent basis for resolving BillJCo's appeal because BillJCo does not dispute that the term is met by the prior art under the Board's construction. Alternatively, the Court need not reach the "beaconing" claim construction issue because the Board found that the prior art teaches this limitation even under BillJCo's proposed construction, and that finding is supported by substantial evidence. *See infra* §III.B.

The Challenged Claims recite "maintaining, by the sending data processing system, a configuration for when to perform *beaconing* of the broadcast unidirectional wireless data record" and that the wireless data record is "*beaconed* by the sending data processing system in accordance with the configuration for when to perform beaconing." Appx0166 (118:21-31). Notably absent is any indication that the "beaconing" must be used to locate the transmitter. In fact, claim 1 recites separate claim limitations that address location-related features where such features were intended. For example, claim 1 requires that the "broadcast unidirectional wireless data record" includes "location information associated with the sending data processing system to be used by the each receiving mobile data processing system for determining their own location relative to the location information, and the reference information for further describing the location information associated with the sending data processing system." Appx0166 (118:43–49); Appx0007 (FWD).

Thus, because claim 1 recites separate claim limitations that addresses location-related features, this further confirms that such location-related concepts should not be read into the claim where it is silent. The Board correctly declined BillJCo's request "to change the location-related features to something different from what the claim expressly recites." Appx0007; *see also* Blue Br. at 37.

BillJCo also wrongly argues that "the claim expressly recites a broadcast that is beaconed"—and so equating the two terms improperly rendered "beacon" and "beaconing" superfluous (Blue Br. at 30-31; *see also* Blue Br. at 31-33), but BillJCo mischaracterizes the claim. The claim does *not* recite a "broadcast" or an act of "broadcasting." Rather, the claim recites a component referred to as a "broadcast unidirectional wireless data record" and it is that data record that is beaconed. Appx0166 (118:21-31). Thus, each term has its own meaning in the claims.

Instead, consistent with the claims, the patent specification confirms that beaconing is used interchangeably with broadcasting. For example, the specification provides that "[a] MS signal can be received for processing … as the result of a continuous, or pulsed, *broadcast or beaconing* by the MS (FIG. 13A), perhaps as part of usual communication protocol in progress for the MS … or an MS response to continuous, or pulsed, *broadcast or beaconing* via the service connected antenna." Appx0119 (24:19-26). Similarly, the specification states that "[s]ervice(s) associated with antennas periodically *broadcast (beacon)* their reference

whereabouts (e.g. WDR information) for being received by MSs in the vicinity." Appx0164 (113:53-56). The patent makes no distinction between beaconing and broadcasting.

BillJCo incorrectly asserts that "[t]he Board construed 'beacon' as a 'simple periodic broadcast.'" Blue Br. at 28. It did not. The Board determined that "no additional express construction is necessary to determine patentability." Appx0007. Indeed, many of BillJCo's arguments are directed to refuting a construction requiring "periodicity" or a "periodic" broadcast (Blue Br. at 31, 33-37), but the Board did not adopt that construction. While the Board noted that the specification in one spot equates beaconing with a simple periodic broadcast (Appx0007 (citing Appx0164 (113:35-56))), it also cited other instances where the term is used interchangeably with broadcasting (*id*. (citing Appx0122 (29:66-67))). For example, the Board quoted the specification's description of "a continuous, or pulsed, broadcast or beaconing by the antenna." *Id*. (quoting Appx0122 (29:66-67)).

There is no intrinsic support for BillJCo's proposal that "beaconing" is a transmission that is intended to direct attention to the transmitter (or transmitting with the intent of locating the transmitter). BillJCo asserts that its construction seeks to have the claim "be understood according to its common and ordinary meaning" (Blue Br. at 37), but BillJCo provides no intrinsic evidence of that purported common and ordinary meaning. And the only extrinsic support is the conclusory,

unsupported opinion of Dr. Sharony, BillJCo's expert, that "[a] beacon is a transmission that is designed to attract attention to a specific location." Blue Br. at 30 (quoting Appx4371-Appx4372 (¶54) (Sharony Decl.)). Dr. Sharony cites no evidence, such as dictionaries or other contemporaneous evidence, to support his conclusory opinion. And while he generally alleges that "[m]y review of the '804 Patent leads me to conclude that the patentee used 'beacon' in accordance with this common meaning" (Appx4372 (¶54)), he provides no citation or explanation of what usage in the patent allegedly supports that conclusion. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc) ("[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court.").

BillJCo's proposal that a "beacon" is "a transmission that is intended to direct attention to the transmitter" (Blue Br. at 39) is also vague and ambiguous. For example, it is unclear what it would mean for a sending device or transmission to have "intent" or for the receiving device to give its "attention." Using these concepts to describe beaconing has no support in the intrinsic record, and while extrinsic evidence "may sometimes illuminate a well-understood technical meaning, that does not mean that litigants can introduce ambiguity in a way that disregards language usage in the patent itself." *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1221 (Fed. Cir. 2020).

For the foregoing reasons, the Board correctly rejected BillJCo's request to narrowly construe "beacon" as transmitting with the intent of locating the transmitter. No further construction of the term is needed because BillJCo's only substantive argument relating to this term is its flawed assertion that the prior art fails to teach its construction. *See* §III.B, *infra*; *Vivid Techs.*, 200 F.3d at 803.

## III. The Factual Findings Underlying The Board's Conclusion That All Challenged Claims Of The '804 Patent Are Obvious Over Himmelstein In View of Myr Are Supported By Substantial Evidence

Substantial evidence supports the factual findings underlying the Board's conclusions that (1) Himmelstein teaches "transmitting … the broadcast unidirectional wireless data record for receipt by a plurality of receiving mobile data processing systems in a wireless vicinity of the sending data processing system," (2) Himmelstein in view of Myr renders obvious "beaconing," and (3) a POSA would have been motivated to combine the teachings of Himmelstein and Myr. BillJCo's challenges regarding these findings each fails.

### A. The Board's Findings That Himmelstein Teaches "Transmitting … The Broadcast Unidirectional Wireless Data Record For Receipt By A Plurality Of Receiving Mobile Data Processing Systems In A Wireless Vicinity Of The Sending Data Processing System" Are Supported By Substantial Evidence

The Board's findings—under both claim interpretations—that Himmelstein teaches the "transmitting…" limitation are supported by substantial evidence, including expert opinion, analysis, and citation to Himmelstein. Appx0010-

Appx0012 (citing Appx1770-Appx1771 (2:65–3:1), Appx1773 (7:16–19, 7:48–52, 7:49–52) (Himmelstein); Appx1739-Appx1740 (¶97) (Long Decl.); Appx0225-Appx0226 (Petition); Appx0556-Appx0558 (Reply).[4] BillJCo does not dispute that under the Board's construction, the Board's finding that Himmelstein teaches this limitation is supported by substantial evidence. Moreover, the Board further found that even under BillJCo's proposed construction requiring transmission "directly" to wireless devices in the vicinity of the sending device, Himmelstein's device talks directly to other mobile units in the vicinity without an intervening base station, and this finding is also supported by substantial evidence. On appeal, BillJCo raises three arguments dependent upon its proposed construction—each without merit. Thus, regardless of which construction applies, the Board's decision should be affirmed.

#### 1. The Board Found *Himmelstein* Discloses The "Transmitting" Limitation Under Either Construction

Himmelstein discloses broadcasting the packet directly to multiple mobile devices in the vicinity of the sending system, thus teaching this element regardless of whether direct transmission is required. For example, Himmelstein teaches that packet 50 is transmitted by transceiver 32 of sending mobile unit 16 to "another

---

[4] BillJCo does not dispute that Himmelstein teaches "a broadcast unidirectional wireless data record." The term is introduced earlier in the claim, in an element that BillJCo did not address. *See* Appx0166 (118:8-9); Appx0446-Appx0457 (POR); Blue Br. at 39-55.

mobile device." Appx1770-Appx1771 (2:65-3:1); *see also* Appx1739 (¶97) (Dr. Long explaining that the packet is transmitted to multiple other mobile devices); Appx0225 (Petition). Moreover, Himmelstein expressly discloses a piconet embodiment with broadcasts from the mobile device "directly" to multiple other mobile devices without the use of the base station: "The mobile devices can form a secure piconet and communicate among the connected devices. Accordingly, using this technology, *mobile units 16 can talk directly to other mobile units 16 without the intervention of the base stations 14 and the base station controller 20*." Appx1773 (7:48-52) (Himmelstein); Appx0225-Appx0226 (Petition). Based on this evidence and analysis, the Board found that "Himmelstein further teaches transmitting the communication packet wirelessly from one mobile unit to other units within the sending unit's wireless vicinity." Appx0011 (citing Appx0225-Appx0226 (Petition); Appx1770-1771 (2:65–3:1), Appx1773 (7:16–19, 7:48–52) (Himmelstein)).

The Board rejected BillJCo's argument that Himmelstein does not teach transmitting to mobile units because all communications are purportedly processed through and controlled by a base station in Himmelstein's primary embodiment or a "master" node (BillJCo's terminology) in Himmelstein's piconet architecture. Appx0011 (FWD) (citing Appx0452-Appx0453 (POR)). According to BillJCo, in both of these embodiments there is no communication directly from one mobile to

unit to other multiple units "because transmission[s] must be processed through a central base station controller or 'master' device." Appx0011-Appx0012 (quoting Appx0453 (POR)).[5]

The Board rejected BillJCo's argument for two independent reasons. First, it is premised on BillJCo's proposed construction requiring direct transmission without passing through an intervening device, which the Board did not adopt. Appx0012. Second, the Board found that Himmelstein teaches this limitation even under BillJCo's proposed construction and alleged "mater"-"slave" framework because "in Himmelstein's piconet architecture, 'the primary or master device is the 'sending data processing system'' that can 'talk directly to other mobile units,' without an intervening base station." Appx0012 (quoting Appx0558 (Reply); Appx1773 (7:49–52) (Himmelstein)). Based on this evidence and analysis, the Board rejected BillJCo's arguments and found that Himmelstein's piconet embodiment teaches the limitation. Appx0012.

[5] Himmelstein does not refer to "master" and "slave" devices—such terminology was introduced by BillJCo and its expert with no support in Himmelstein or anywhere else in the record. Appx0437 (POR) (citing Appx4369 (¶¶45-46) (Sharony Decl.)).

### 2. BillJCo's Arguments On Appeal Depend On Its Legally Erroneous Construction and Ignore The Board's Finding Under BillJCo's Construction

BillJCo raises three arguments on appeal—all dependent upon BillJCo's proposed construction, which the Board found is met by Himmelstein regardless.

First, BillJCo argues that the Board's findings are "premised on a legally erroneous claim construction" (Blue Br. at 41-42), but as discussed, the Board found that Himmelstein teaches this limitation even under BillJCo's construction. Appx0012 (quoting Appx0558 (Reply); Appx1773 (7:49–52) (Himmelstein)). Thus, even if the Court were to agree with BillJCo's proposed construction, the Board's determinations of unpatentability should be affirmed.

Second, BillJCo argues that the Board's findings "are based on arguments not raised in Apple's Petition" (Blue Br. at 41; *see also id*. at 45-46), but using Himmelstein's piconet architecture to transmit directly to other mobile units without an intervening base station was expressly set forth in the section of Apple's Petition addressing this limitation. Appx0225-Appx0226 (Petition). Specifically, Apple explained that "Himmelstein teaches that communication packet 50 is *transmitted to receiving mobile units 16 in the wireless vicinity* o*f the sending mobile unit 16*" and Apple quoted Himmelstein's disclosure that "[t]he mobile devices can form a secure piconet and communicate among the connected devices. Accordingly, using this technology, *mobile units 16 can talk directly to other mobile units 16 without the*

*intervention of the base stations 14 and the base station controller 20*." Appx0225-Appx0226 (Petition) (quoting Appx1773 (7:48-52) (Himmelstein)).

While Apple's Petition did not discuss a "master"-"slave" relationship using BillJCo's terminology, such details are unnecessary because Himmelstein discloses a configuration that meets the claim language under BillJCo's construction regardless of further implementation details such as whether a particular mobile device is a "master" or "slave." Moreover, Apple's reply to BillJCo's argument was proper rebuttal, to which BillJCo had ample opportunity to respond, and was supported by Apple's Petition evidence. BillJCo argued in its Patent Owner's Response that in Himmelstein's piconet architecture, a "master" device would take the place of a base station and there would be "no communication from any slave directly to another slave." Appx0452-Appx0453. In reply, Apple pointed out that BillJCo incorrectly assumed that the sending device would be a "slave" rather than the "master." Appx0558. Indeed, Himmelstein never states that the sending device in the piconet architecture would be a "slave" device—that assumption was simply suggested by BillJCo to build its faulty argument. Himmelstein does not even describe its piconet architecture using the concepts of "master" or "slave" devices.

Third, BillJCo incorrectly argues that the Board's finding that Himmelstein's piconet architecture meets the "transmitting" step under BillJCo's construction lacks substantial evidence. Blue Br. at 41, 46-48. As discussed above, the Board

supported its findings with expert opinion, analysis, and citation to Himmelstein, and rejected BillJCo's flawed argument based on that evidence—more than meeting the substantial evidence standard. Appx0010-Appx0012 (citing Appx1770-Appx1771 (2:65–3:1), Appx1773 (7:16–19, 7:48–52, 7:49–52) (Himmelstein); Appx1739-Appx1740 (¶97) (Long Decl.); Appx0225-Appx0226 (Petition); Appx0556-Appx0558 (Reply)).

BillJCo asserts that "nothing in Himmelstein actually speaks to a master and slave architecture, let alone a master acting as a sending device" (Blue Br. at 46), but again, it was BillJCo that introduced the "master"-"slave" framework to Himmelstein's piconet architecture, and then incorrectly assumed that a "slave" device would be the sending device in Apple's claim mapping.

BillJCo next argues that there is no evidence that the sending device transmits to a plurality of receiving devices "since a master sending data to a slave is not to a plurality of devices" and that the piconet requires "repeaters" (Blue Br. at 46-47), but again these arguments are contradicted by Himmelstein's disclosure. Specifically, Himmelstein teaches that "mobile units 16 can talk directly to other mobile units 16" (*i.e.*, can transmit directly to multiple "mobile units"). Appx1773 (7:49-52) (Himmelstein). Moreover, while mobile units can be used as repeaters (e.g., if the final destination is multiple hops away), Himmelstein nowhere states that

a repeater is required for every transmission. For example, a repeater is not required when transmitting to devices within range of the sending device.

Similarly, BillJCo's footnote argument that a piconet architecture is short-range and unsuitable as an alternative to the base station controller architecture (Blue Br. at 47-48, n.5) is contradicted by Himmelstein. Himmelstein discloses using the piconet architecture "without the intervention of the base stations 14 and the base station controller 20." Appx1773 (7:49-52) (Himmelstein).

The Board's findings that Himmelstein teaches the "transmitting…" limitation, including under BillJCo's proposed construction, are supported by substantial evidence.

### B. The Board's Finding That Himmelstein In View Of Myr Renders Obvious "Beaconing" Is Supported By Substantial Evidence

Substantial evidence supports the Board's findings that Himmelstein in view of Myr renders obvious "beaconing" under both claim interpretations. *See, e.g.*, Appx0011, Appx0013 (FWD) (citing Appx1774 (10:26–29) (Himmelstein); Appx1804 (¶¶92, 96) (Myr); Appx0204-Appx0205, Appx0226, Appx0230 (Petition); Appx0554-Appx0566 (Reply). First, BillJCo does not dispute that, under the Board's construction of "beaconing," substantial evidence supports the Board's finding that Himmelstein in view of Myr renders obvious this limitation. Second, the Board further found that even under BillJCo's proposed construction requiring transmitting with the intent of locating the transmitter or a transmission that is

intended to direct attention to the transmitter, Himmelstein teaches transmitting the sending device's location so that the receiving device can determine its location relative to the location information. Appx0013. Again, substantial evidence supports this finding. *See id.* (citing Appx1774 (10:26–29) (Himmelstein); Appx0230 (Petition). Thus, regardless of which construction applies, the Board's decision should be affirmed.

Elements [1.10] and [1.11] of claim 1 of the '804 patent require the steps of "maintaining, by the sending data processing system, a configuration for when to perform *beaconing* of the broadcast unidirectional wireless data record" and transmitting a broadcast unidirectional wireless data record "wherein the broadcast unidirectional wireless data record is *beaconed* by the sending data processing system in accordance with the configuration for when to perform *beaconing*." Appx0166 (118:21-32). Of relevance to the parties' dispute, this portion of the claim requires "beaconing" of a broadcast unidirectional wireless data record. As discussed in Section III.B, *supra*, it is undisputed that Himmelstein teaches "a broadcast unidirectional wireless data record" as first introduced in an earlier claim element. But the parties dispute whether the prior art renders obvious "beaconing" that broadcast unidirectional wireless data record under BillJCo's proposed construction.

With respect to that claim construction dispute, the parties disagree whether the term "beaconing" is limited, as BillJCo argues, to "a transmission that is intended to direct attention to the transmitter" (a construction that BillJCo has previously equated to "transmitting with the intent of locating the transmitter," Appx0442-Appx0443 (POR); Appx0580 (PO Sur-Reply); Appx0006-Appx0007 (FWD)). *See* §III.B, *supra*. As discussed, the Board correctly rejected BillJCo's proposed construction. *Id*.

Himmelstein in view of Myr renders obvious the "beaconing" element under both the plain meaning of "beaconing" and under BillJCo's narrow interpretation. As Apple explained for the prior term (*see supra* §III.A), Himmelstein teaches broadcasting a packet, which contains information that maps to the claimed "broadcast unidirectional wireless data record," to multiple mobile devices. For example, Himmelstein teaches that packet 50 is transmitted by transceiver 32 of sending mobile unit 16 to "another mobile device." Appx1770-Appx1771 (2:65-3:1) (Himmelstein); Appx0225 (Petition). Himmelstein also discloses a piconet embodiment that broadcasts from the mobile device to multiple other mobile devices without the use of the base station. Appx1773 (7:48-52) (Himmelstein); Appx0225-Appx0226 (Petition). Based on this evidence, the Board found that "Himmelstein … teaches transmitting the communication packet wirelessly from one mobile unit to other units within the sending unit's wireless vicinity." Appx0011 (citing

Appx0225-Appx0226 (Petition); Appx1770-Appx1771 (2:65–3:1), Appx1773, (7:16–19, 7:48–52) (Himmelstein)).

Apple further explained that Myr teaches a configuration for when to perform beaconing. For example, Myr discloses transmitting periodic data packets. Appx1804 (¶¶92, 96) (Myr); Appx1740 (¶98) (Long Decl.); Appx0226 (Petition); Appx0011 (FWD) (citing Appx0204, Appx0226 (Petition); Appx1804 (¶¶92, 96) (Myr)). Apple's expert, Dr. Long, explained that a POSA would have been motivated to apply Myr's teaching to Himmelstein because use of a configuration for when to perform the beaconing, as taught by Myr, would have allowed the mobile devices in Himmelstein to use less power while still being able to identify other mobile devices in the same region.[6] Appx1716-Appx1717 (¶¶55-58), Appx1738 (¶95), Appx1740 (¶98) (Long Decl.); Appx0203-Appx0205, Appx0224, Appx0226 (Petition).

Based on this evidence and analysis, the Board first found that Himmelstein in view of Myr renders obvious this limitation under the Board's construction—*i.e.*, the interpretation that does not require transmitting with the intent of locating the transmitter. Appx0013. Specifically, the Board disagreed with BillJCo's arguments for this limitation because they were "premised on [BillJCo's] construction of

[6] BillJCo raises a motivation to combine argument for this combination, which both parties have addressed as a separate issue in their briefs. *See* Blue Br. at 52-55; *infra* §III.C.

beaconing" and found that "Himmelstein and Myr teach claim 1's 'beaconing' a broadcast unidirectional wireless data record according to maintained configuration for when to do so, as claim 1 requires." Appx0013-Appx0014.

The Board also found that the Himmelstein in view of Myr renders obvious this limitation under BillJCo's proposed construction (*i.e.*, if beaconing requires a transmission that is intended to direct attention to the transmitter or transmitting with the intent of locating the transmitter). Appx0013-Appx0014. Under that construction, the Board found that Himmelstein teaches transmitting the sending station's location information so that the sending device can determine its relative location. Appx0013 (FWD) (citing Appx1774 (10:26–29) (Himmelstein); Appx0230 (Petition). For example, Himmelstein discloses that "[s]ince all of the detailed information is available in the packet header 51, the system 10 can provide the speed, direction, and *location* of the other vehicle *in relation to the present vehicle*." Appx1774 (10:26-29) (Himmelstein); Appx0230 (Petition). This disclosure was presented by Apple in connection with the location-related elements of the claims. Appx0229-Appx0231 (Petition). BillJCo did not dispute Himmelstein's teaching that the broadcast unidirectional wireless data record including location information is used by each receiving mobile data processing system for determining their location relative to the location information of the sending device. *See id.* Based on this evidence, the Board agreed that Himmelstein

teaches transmitting location information for determining relative location and concluded that "it is undisputed that Himmelstein teaches the alleged missing feature." Appx0013 (FWD) (citing Appx1774 (10:26-29) (Himmelstein); Appx0230 (Petition)). Thus, the Board found that "the asserted combination of Himmelstein and Myr teaches beaconing, even under Patent Owner's construction." Appx0013.

BillJCo's arguments on appeal are all dependent on the adoption of BillJCo's proposed construction. First, BillJCo argues that "the Board's determination that this element was met should be reversed" because it was based on an "incorrect claim construction" (Blue Br. at 50), but as discussed, the Board found that the combination of Himmelstein in view of Myr teaches beaconing even under BillJCo's construction. Appx0013 (citing Appx1774 (10:26-29) (Himmelstein); Appx0230 (Petition)).

Second, BillJCo asserts that the argument that Himmelstein taught beaconing, including drawing attention to location, "was an argument not made by Apple in its Petition" (Blue Br. at 50), but Apple's Petition mapping across the entire claim was presented as using Himmelstein's teaching of sending location information that is used by the receiving device to determine its relative location. Apple first discussed Himmelstein's location information teachings in connection with Elements [1.3] and [1.4], which require accessing location information in the sending device.

Appx0214-Appx0218 (Petition). Apple next addressed, in connection with Elements [1.5] and [1.8], Himmelstein's teaching of preparing a broadcast unidirectional wireless data record including that location information. Appx0219, Appx0221 (Petition). Apple then addressed—in connection with the "beaconing" elements [1.10] and [1.11] at issue here—how Himmelstein in view of Myr renders obvious beaconing the broadcast unidirectional wireless data record. Appx0222-Appx0226 (Petition). Importantly, Apple had already established that Himmelstein's broadcast unidirectional wireless data record includes location information in connection with Elements [1.5] and [1.8], and BillJCo did and does not dispute that teaching. *See* Appx0446-Appx0457 (POR). Finally, in connection with Elements [1.14] and [1.15], which relate to how the location information is used by the receiving device, Apple explained how Himmelstein teaches that the location information of the broadcast unidirectional wireless data record is used by each receiving mobile data processing system for determining its location relative to the sending device. Appx0229-Appx0233 (Petition). Once again, BillJCo did not and does not dispute these teachings. *See* Appx0446-Appx0457 (POR). Thus, not only did Apple explain throughout the Petition how Himmelstein's location information is accessed, added to a wireless data record, and beaconed for use by the receiving devices to determine their location relative to the sending device, BillJCo did not dispute *any* of Himmelstein's location-related teachings presented in the Petition.

BillJCo's strategy here is clear—it saw that Apple's Petition presented teachings in the prior art of transmitting location information to determine relative location, and so it looked for a different term not directly related to location ("beaconing") and attempted to extend the claim's location-determining functionality to that term, knowing that the Petition had no reason to discuss location-determining under that particular heading. In other words, with no gap in the substance, BillJCo instead tried to manufacture one. Its strategy puts form over substance and should be rejected.

In any event, this Court has held that "where a patent owner in an IPR first proposes a claim construction in a patent owner response, a petitioner must be given the opportunity in its reply to argue and present evidence of anticipation or obviousness under the new construction." *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374, 1383 (Fed. Cir. 2023). Given that BillJCo's arguments to distinguish the prior art were under its proposed construction first presented in its Patent Owner's Response (Appx0441-Appx0443, Appx0446-Appx0449), Apple was allowed to address those arguments in Reply and did so using evidence already in the Petition. Moreover, BillJCo had a full opportunity to respond to that evidence in the Patent Owner Response, the Sur-Reply and at oral argument. *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1023 (Fed. Cir. 2017) (affirming the Board's denial of a motion to strike an alleged new reply argument because patent owner "filed a

surreply addressing the … argument" and "does not contend that, for example, it lacked notice and the ability to respond to any particular argument").

The Board's finding that Himmelstein in view of Myr renders obvious "beaconing" is supported by substantial evidence.

### C. The Board's Findings That A POSA Would Have Been Motivated To Apply Myr's Teachings To Himmelstein Are Supported By Substantial Evidence

The Board's findings that a POSA would have been motivated to apply Myr's teaching to Himmelstein are also supported by substantial evidence, including extensive analysis and citation to both the prior art and to the testimony of Apple's expert. Appx0014-Appx0016 (FWD) (citing Appx1717 (¶58) (Long Decl.); Appx0204-Appx0205, Appx0226 (Petition)).

In Apple's Petition, Myr is relied upon for limited teachings relating to periodically beaconing a signal, including when to perform beaconing. Appx0204-Appx0205, Appx0222-Appx0226 (Petition); Appx1803-Appx1804 (¶¶69, 92, 96), Appx1781 (Fig. 1) (Myr); Appx1736-Appx1741, ¶¶93-99 (Long Decl.). Myr explains that "it is time and cost effective if the data are received in the form of periodic data packets in real time, such as, 1 to 3 minutes, for example." Appx1804 (¶92) (Myr); Appx0198, Appx0222 (Petition). Apple's expert, Dr. Long, explained that "[a] POSA would have understood that one advantage of periodically beaconing a signal is that [it] saves the power needed to transmit the signal" and "[a] POSA

would have been motivated to save power in the Himmelstein system by using the teaching in Myr to periodically beacon the traffic data signals." Appx1717 (¶58) (Long Decl.); Appx0205 (Petition); *see also* Appx1716-Appx1717 (¶¶55-57), Appx1738 (¶95), Appx1740 (¶98) (Long Decl.); Appx0203-Appx0205, Appx0224, Appx0226 (Petition).

The Board agreed with this analysis, finding that "[g]iven Petitioner's explanation that Myr's periodic transmission would be a time- and cost-effective method of transmission in Himmelstein's system, Petitioner has articulated sufficient reasoning with rational underpinning to support the legal conclusion that its proffered combination would have been obvious." Appx0016 (FWD); *see also* Appx0014 (FWD) (citing Appx1717 (¶58) (Long Decl.); Appx0205 (Petition)). As an additional, separate basis for the combination of Himmelstein and Myr, the Board found that the combination "would have been obvious because it amounts to no more than using a known technique (Myr's periodic transmission) in a known device (Himmelstein's mobile units), yielding the predictable result of a mobile unit that periodically transmits information." Appx0016 (FWD) (citing Appx0560 (Reply); *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007)).

BillJCo's arguments against motivation to combine are without merit. First, BillJCo argues that neither Himmelstein nor Myr says anything about power conservation (Blue Br. at 53-54), but the Board credited Dr. Long's explanation that

"[a] POSA would have understood that one advantage of periodically beaconing a signal is that [it] saves the power needed to transmit the signal" (Appx1717 (¶58) (Long Decl.)). Moreover, Myr teaches that "it is … *cost effective* if the data are received in the form of periodic data packets in real time, such as, 1 to 3 minutes, for example" (Appx1804 (¶92) (Myr)), which is a reference to power conservation. BillJCo argues that this statement says nothing about conserving battery power and battery conversation is not an issue for the network operator in Myr (Blue Br. at 54), but as the Board found, using power more efficiently is beneficial, regardless of the power source. Appx0014-Appx0015 (FWD) (citing *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 797–99 (Fed. Cir. 2021) (determining that the Board's rejection of "increasing energy efficiency," as a motivation to combine lacked substantial evidence)). BillJCo does not address this finding by the Board.

Next, BillJCo argues that "transmitting every 1 to 3 minutes as taught by Myr is contrary to Himmelstein's stated purpose of communicating with nearby vehicles and roadside sites" because an automobile "would be miles away from another vehicle or roadside location if the transmission was delayed by 3 minutes" (Blue Br. at 54 (citing Appx1770 (1:17-21) (Himmelstein))), but BillJCo's argument ignores that Myr itself is a car environment, just like Himmelstein. *See, e.g.*, Appx1780 (Abstract) (Myr) ("Location information obtained and continuously updated from vehicular-based cellular phones is collected…."). Moreover, the one- to three-

minute interval discussed in Myr is merely an "example," and so other intervals would be used depending on the needs of the particular system. Appx1804 (¶92) (Myr). Indeed, Dr. Long did not propose using a one- to three-minute interval—instead explaining that "the Himmelstein system would have been improved by the teachings of Myr because the sending device should provide the signal *at advantageous times*," for example "in Himmelstein, a sending device may only beacon the signal at times *when receiving mobile devices are likely to be nearby* instead of beaconing the signal continuously when a mobile device may be located in a remote location." Appx1717 (¶58) (Long Decl.); Appx0205 (Petition). Thus, BillJCo does not address the combination as presented or Dr. Long's explanation credited by the Board.

BillJCo argues that Himmelstein teaches away by disparaging cell phones and instead discloses the use of a system comprising vehicle-based devices (Blue Br. at 55 (citing Appx1770 (1:28-35) (Himmelstein))), but Himmelstein later explains that "although the mobile units 16 were described hereinbefore as being located in a vehicle or in a fixed location, *they can be incorporated as part of a cellular phone* or other portable communication device." Appx1776 (13:16-19). Moreover, as the Board correctly found, the passage BillJCo cites in Himmelstein's background section "addresses conventional communication environments, but does not extend to the improved communication environment in Himmelstein on which Petitioner

relies." Appx0015. For example, after the allegedly disparaging statement, Himmelstein states that "[t]he present invention … eliminates these pitfalls." Appx1770 (1:54–55) (Himmelstein); Appx0015 (FWD).

Finally, BillJCo argues that "the Board's reliance on the claim that the combination yielded predictable results … is not an argument made by Apple in its Petition as a reason to combine Himmelstein and Myr" (Blue Br. at 54), but Apple's citation to *KSR* in its Reply was simply an extension of its Petition analysis, rather than a new argument. The Petition identified Myr's disclosure of transmitting information periodically as a known technique (*e.g.*, "Myr teaches a POSA that its system is configured to periodically beacon its signal," Appx0205), identified this teaching's application to Himmelstein's known mobile unit (*e.g.*, "adopting the beaconing aspect of Myr" in Himmelstein's "mobile device," *id.*), and explained the predictable result of the combination (*e.g.*, "instead of beaconing the signal continuously" the mobile device "only provide[s] the signal at advantageous times," *id.*). Consistent with this Petition analysis, Apple's Reply explained that the combination amounted to "applying a known technique (transmitting information periodically as in Myr) to a known device (a mobile unit in Himmelstein) to yield predictable results (a mobile unit that periodically transmits information)." Appx0560. In addition, the Board's reliance on this argument was an alternative, independent basis in the Board's decision. First the Board found that "*[g]iven*

*Petitioner's explanation that Myr's periodic transmission would be a time- and cost-effective method of transmission in Himmelstein's system*, Petitioner has articulated sufficient reasoning with rational underpinning to support the legal conclusion that its proffered combination would have been obvious." Appx0016. Only after making this finding did the Board find that "*[i]n addition*" the combination would have been obvious because it amounts to no more than using a known technique in a known device yielding the predictable result of a mobile unit that periodically transmits information. *Id*.

Thus, the Board's findings on motivation to combine the teachings of Himmelstein and Myr are supported by substantial evidence.

## IV. The Board's Findings On Secondary Considerations Are Supported By Substantial Evidence

The Board's factual findings on the three alleged secondary considerations raised by BillJCo, including the Board's findings that the evidence is entitled to little weight, are supported by substantial evidence. BillJCo's assertion of copying based on alleged unsolicited access to parent patent applications failed to show substantial similarity of Apple's product to the patented technology or that Apple changed its product design based on access to the patent applications. For BillJCo's allegation of commercial success, BillJCo presented no evidence of the foundational requirement—commercial success of the alleged patent-practicing product—or nexus of commercial success to the claimed invention. Finally, with respect to

licensing, BillJCo did not show sufficient nexus between the value of the identified license, which covered numerous other technologies, and the claims of the patent at issue here.

As a preliminary matter, to the extent BillJCo's is suggesting that it is entitled to a presumption of nexus between the claimed invention and the alleged secondary considerations evidence (Blue Br. at 55-57), BillJCo is incorrect. Nexus is presumed only if BillJCo shows that "the marketed product embodies the claimed features, and is coextensive with them." *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). BillJCo made no such showing. Instead, BillJCo simply stated—in a single conclusory sentence—that the claims "cover Petitioner devices." Appx0464 (POR). As this Court has held, a "single, conclusory sentence and one-paragraph citation [is] insufficient to show a presumption of nexus." *Volvo Penta of the Ams., LLC v. Brunswick Corp.*, 81 F.4th 1202, 1211 (Fed. Cir. 2023). While BillJCo purported to briefly describe Apple's products (Appx0461-Appx0464), that summary provided zero discussion or analysis of how the product embodies the claimed features or is coextensive with them. BillJCo cites a purported claim chart for the '804 patent (Blue Br. at 61 (citing Appx4480-Appx4482); Appx0464 (POR) (citing the same chart), but it too includes no analysis, just unexplained citations, and only for the preamble and Elements [1.1] and [1.2]. The chart does not even include rows for or any mention of the other thirteen claim

elements of claim 1. Appx4480-Appx4482. And BillJCo's expert, Dr. Sharony, is completely silent on this issue. Finally, now on appeal, BillJCo once again provides no analysis.

BillJCo argues that its evidence that the products allegedly embody the claimed inventions was unrebutted (Blue Br. at 56), but BillJCo bears the burden of showing it is entitled to a presumption of nexus. *Volvo*, 81 F.4th at 1211 (citing *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019)). BillJCo's conclusory assertion that the claims cover Apple's devices fails to meet that burden.

BillJCo's alleged evidence fails to show copying or commercial success, let alone nexus. The Board's findings are supported by substantial evidence.

### A. The Board's Finding That BillJCo Failed To Show Copying Is Supported By Substantial Evidence

The Board's findings that BillJCo's evidence is insufficient to create an inference that Apple copied the claims-at-issue was supported by substantial evidence. Appx0017-Appx0018. "[C]opying requires evidence of efforts to replicate a specific product, which may be demonstrated through internal company documents, direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a replica, or access to the patented product combined with substantial similarity to the patented product." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010). Where alleged access is based on access to a patent rather than "access to the patented

product," this Court has held that "access to an *issued patent* coupled with circumstantial evidence regarding changes to a competitor's design is sufficient to support copying." *Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1138 (Fed. Cir. 2019) (emphasis in original) (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1328–29 (Fed. Cir. 2009)).

Here, the circumstantial evidence relied on by BillJCo does not suggest that Apple copied BillJCo's claimed technology. In an attempt to show access, BillJCo pointed solely to unsolicited communications to Apple in which BillJCo sought to monetize patent applications to which the '804 patent later claimed priority. Appx0459-Appx0461 (POR); Appx0018 (FWD); *see also* Blue. Br. at 57-59. The application that became the '804 patent was not filed until September 23, 2013, *after* the June 2013 date that BillJCo alleges that Apple announced its product. Appx0033; Blue Br. at 59. BillJCo also did nothing to show substantial similarity of Apple's product to the claimed technology, and does not allege that Apple changed its product design based on access to the patent. As discussed above, BillJCo simply stated in a single conclusory sentence that the claims "cover Petitioner devices." Appx0464 (POR); Appx0018 (FWD); *see also* Blue Br. at 61. Thus, the Board found that these "general allegations" were insufficient to infer that Apple had copied the patented technology. Appx0018 (FWD).

BillJCo has not cited a single case holding that access to a patent and a conclusory assertion that a product meets the claims is sufficient to show copying. BillJCo's reliance on *Liqwd* is misplaced. In that case, the Board "made a factual finding that 'the preponderance of the evidence suggests that [L'Oreal] used maleic acid because of [L'Oreal's] access to [Liqwd's] non-public information, rather than because of [L'Oreal's] independent development.'" *Liqwd*, 941 F.3d at 1138-39 (alterations in original). The Board there also disregarded its own finding. *Id*. Thus, unlike here, (1) there was evidence that L'Oreal used the patented technology (maleic acid), (2) there was evidence that this use was "because of" access to Liqwd's technology, and (3) the Board had made a finding on these points, which it then disregarded.

BillJCo's purported evidence failed to show copying and nexus. The Board's findings here are supported by substantial evidence and should be affirmed.

### B. The Board's Finding That BillJCo Failed To Show Commercial Success Tied To The Patent Is Supported By Substantial Evidence

Substantial evidence supports the Board's findings that BillJCo failed to show commercial success tied to the patent. Commercial success is "usually shown by significant sales in a relevant market." *Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1378 (Fed. Cir. 2021) (quoting *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997)), cert. denied, 142 S. Ct. 1418 (2022). The patent owner must also "show that the commercial success of the

product results from the claimed invention" and furthermore "the asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art." *J.T. Eaton*, 106 F.3d at 1571.

Here, BillJCo has not identified *any* evidence of commercial success or nexus. In the IPR, BillJCo cites only product descriptions that allegedly "touted the claimed features." Appx0464-Appx0465 (POR); Blue Br. at 62 ("Apple touted the claimed features of the invention…."). Thus, BillJCo has made only a conclusory statement that the "touted" features are in fact covered by the claims and has provided no evidence to show that the identified product was commercially successful. For instance, BillJCo submitted no sales data, public statements, or any other evidence that could be used to infer commercial success. *Chemours*, 4 F.4th at 1378 (explaining that commercial success is "usually shown by significant sales in a relevant market"). In addition, because BillJCo has not shown commercial success, and separately because it has not shown that Apple's products embody the claimed features and are coextensive with them, it also has not shown success attributable to the claimed invention. *J.T. Eaton*, 106 F.3d at 1571. Thus, the Board correctly found that the alleged touting was related to the products' functionality, not their commercial success, and rejected BillJCo's assertion of commercial success. Appx0018-Appx0019 (FWD).

BillJCo's purported evidence again failed to show commercial success and nexus. The Board's findings here are supported by substantial evidence and should be affirmed.

### C. The Board's Finding That BillJCo Failed To Show Sufficient Nexus For Licensing Is Supported By Substantial Evidence

Substantial evidence supports the Board's findings that BillJCo failed to show sufficient nexus between licensing and the claims of the patent at issue here. BillJCo had the burden to establish "a nexus between its licensing and the patented invention." *In re Antor Media Corp.*, 689 F.3d 1282, 1293 (Fed. Cir. 2012). In particular, this Court's "cases specifically require affirmative evidence of nexus where the evidence of commercial success presented is a license, because it is often 'cheaper to take licenses than to defend infringement suits.'" *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004) (quoting *EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 908 (Fed. Cir. 1985)).

BillJCo did not present any evidence of nexus between the asserted licenses and the alleged invention beyond "'the mere existence of … licenses[, which] is insufficient to overcome the conclusion of obviousness.'" *Iron Grip Barbell*, 392 F.3d at 1324 ("Without a showing of nexus, 'the mere existence of … licenses is insufficient to overcome the conclusion of obviousness….'") (quoting *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1358 (Fed. Cir. 2000). BillJCo concedes that the asserted licenses address more than thirty patents, only

one of which is the patent-at-issue here. Blue Br. at 63; Appx0019. Given the number of licensed patents, "the nexus between the license and the validity of any particular claim is rather tenuous to say the least." *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 8 F.4th 1349, 1363 (Fed. Cir. 2021). While there were more licensed patents in *Teva*, here the patent-at-issue still represents a small portion of the licensed patents. Moreover, as the Board found, BillJCo "failed to provide any evidence regarding the weight or importance of the '804 Patent to these agreements." Appx0019. In cases like this one where BillJCo "provide[d] no evidence showing that the licensing program was successful … because of the merits of the claimed invention" as opposed to "because they were entered into as business decisions to avoid litigation, because of prior business relationships, or for other economic reasons," this Court has held that "[t]he Board was … correct in holding that the existence of those licenses is, on its own, insufficient to overcome the prima facie case of obviousness." *In re Antor*, 689 F.3d at 1294.

BillJCo's purported evidence of licensing failed to show nexus. The Board's findings here are supported by substantial evidence and should be affirmed.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons expressed above, the Court should affirm the determinations of the Patent Trial and Appeal Board that claims 1 and 10-12 of the '804 Patent are unpatentable.

Respectfully submitted,

*<u>/s/ James L. Davis, Jr.</u>*
James L. Davis, Jr.
James R. Batchelder
Christopher M. Bonny
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Phone: (650) 617-4000

Douglas H. Hallward-Driemeier
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Phone: (202) 508-4600

Brian P. Lebow
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Phone: (212) 596-9000

*Counsel for Appellee Apple Inc.*

Dated: January 22, 2024

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b)(1). The brief contains 12,296 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

*/s/ James L. Davis, Jr.*
James L. Davis, Jr.
*Counsel for Apple Inc.*

## CERTIFICATE OF SERVICE

On January 22, 2024, the undersigned caused the foregoing document to be filed electronically by using the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ James L. Davis, Jr.*
James L. Davis, Jr.
*Counsel for Apple Inc.*