No. 2023-2348

# In the United States Court of Appeals for the Federal Circuit

**BILLJCO, LLC**,
*Appellant*,

v.

**APPLE INC.**,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2022-00426

## BILLJCO, LLC'S REPLY BRIEF

Brian R. Michalek
Joseph M. Kuo
Elizabeth A. Thompson
Saul Ewing LLP
161 N. Clark Street, Suite 4200
Chicago, IL 60601
Tel: (312) 876-7100
Brian.Michalek@saul.com
Joseph.Kuo@saul.com
Elizabeth.Thompson@saul.com

Brian Landry
Saul Ewing LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
Tel: (617) 912-0969
Brian.Landry@saul.com

Courtland C. Merrill
Saul Ewing LLP
33 South Sixth Street, Suite 4750
Minneapolis, MN 55402
Tel: (612) 225-2943
Courtland.Merrill@saul.com

*Counsel for Appellant, BillJCo, LLC*

# TABLE OF CONTENTS

**PAGE**


I. Introduction ........................................................ 1

II. Apple's Response Fails To Excuse The Board's Legal And Factual Errors ........................................................ 4

A. The Board's Claim Constructions Were Wrong ........................................................ 4

1. Transmitting, By The Sending Data Processing System, The Broadcast Unidirectional Wireless Data Record For Receipt By A Plurality Of Receiving Mobile Data Processing Systems In A Wireless Vicinity Of The Sending Data Processing System … ........................................................ 5

2. "Beacon" Limitations ........................................................ 16

B. The Board's Factual Determinations Are Not Supported By Substantial Evidence ........................................................ 20

1. The Prior Art Does Not Disclose Or Render Obvious The "Transmitting" Limitation ........................................................ 21

2. The Prior Art Does Not Disclose Or Render Obvious The Beacon Limitations ........................................................ 26

3. Apple's Response Regarding The Failure Of Substantial Evidence To Support A Motivation To Combine Himmelstein And Myr Fails To Refute BillJCo's Arguments ........................................................ 28

C. Objective Indicia Of Non-Obviousness Demonstrates The Patentability Of The Challenged Claims ........................................................ 28

III. Conclusion ........................................................ 30

# TABLE OF AUTHORITIES

*Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362 (Fed. Cir. 2008) ....................20

*Bicon, Inc. v. Straumann Co.*, 441 F. 3d 945 (Fed. Cir. 2006) ....................18

*Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375 (Fed. Cir. 2015) ....................25, 26

*Google LLC v. EcoFactor, Inc.*, No. 2022-1750, 2024 WL 463231 (Fed. Cir. Feb. 7, 2024) ....................5

*Henny Penny Corp v. Frymaster LLC*, 938 F.3d 1324 (Fed. Cir. 2019) ....................26

*In re Power Integrations, Inc.*, 884 F.3d 1370 (Fed. Cir. 2018) ....................14

*Kaken Pharmaceutical Co., Ltd. v. Iancu*, 952 F.3d 1346 (Fed. Cir. 2020) ....................13

*Merck & Co. v. Teva Pharmaceuticals USA*, 395 F.3d 1364 (Fed. Cir. 2005) ....................17

*Netflix Inc., v. DIVX, LLC*, 84 F.4th 1371 (Fed. Cir. 2023) ....................26

*Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331 (Fed. Cir. 2003) ....................1

*Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365 (Fed. Cir. 2023) ....................28

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ....................14

*Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360 (Fed. Cir. 2002) ....................7

*Ruckus Wireless v. Innovative Wireless*, 824 F.3d 999 (Fed. Cir. 2016) ....................11, 14, 15

*SAS Institute Inc. v. Iancu*, 138 S.Ct. 1348 (2018) ....................26

*Shire Development, LLC v. Watson Pharmaceuticals*, 787 F.3d 1359 (Fed. Cir. 2015) ....................18

*SiRF Technology, Inc. v. International Trade Com'n*, 601 F.3d 1319 (Fed. Cir. 2010) ....................8

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012) ....................19

*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991) ....................28

## I. Introduction

The Board found the Challenged Claims of U.S. Patent No. 8,761,804 ("'804 Patent") to be unpatentable as obvious in view of Himmelstein in combination with Myr. Appx0001-Appx0021. For the reasons discussed here and in BillJCo's Opening Brief ("Opening"), the Board's Final Written Decision ("FWD") should be reversed or remanded for further proceedings consistent with this Court's decision.

An assessment of validity "involves a two-step process. The first step is the same claim construction implicated in an infringement analysis. … The second step involves a comparison of the asserted claims with the prior art." *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Like in other IPRs between Apple and BillJCo that have been designated as "companion" cases to this case, the Board failed to follow this Court's instructions. Instead of determining the scope of the Challenged Claims in view of the intrinsic evidence, ***and then*** comparing the prior art disclosures therewith, the Board took the prior art and then reconfigured the plain and ordinary meaning of the claim language to fit whatever the prior art disclosed. In so doing, the Board gave only passing or no consideration of the intrinsic evidence with its claim construction analysis to assign the claim terms meanings that conflict with and are unsupported by the intrinsic evidence. *See* Opening § VIII.A.

The first claim construction dispute related to the phrase "transmitting … broadcast unidirectional wireless data record for receipt by a plurality of receiving mobile data processing systems in a wireless vicinity of the sending data processing system." Appx0166, 118:24-32. BillJCo argued the plain and ordinary meaning of this phrase requires direct transmissions of the wireless data record ("WDR") to mobile systems in the vicinity of the sending system. Because the prior art in Apple's Petition only disclosed transmissions from a sending system to mobile systems via an intermediary system, *i.e.*, indirect transmissions, the prior art did not meet this claim limitation. Despite overwhelming intrinsic evidence that BillJCo's claimed LBX architecture was founded on direct transmissions and avoiding the shortcomings of transmissions via middleman and intermediary systems,[1] the Board "declin[ed] to limit this term to direct transmissions…." Appx0008. The Board's decision that the claimed transmitting could include transmitting via an intermediary device was also unsupported by any intrinsic evidence, and Apple likewise fails to identify any in its Response.

The second claim construction issue related to the meaning of "beaconed" or "beaconing." The Board construed "beacon" as merely a transmission that is broadcast. Appx0007. In so doing, the Board went against the very basis for Apple's

[1] The '804 Patent identifies indirect transmission systems as Location Based Services or LBS.

Petition. Apple's expert stated in his declaration that he applied the plain and ordinary meaning for the claim terms and testified that the plain and ordinary meaning of beacon depended on whether the sender had an intent to draw attention to the transmitter. Appx1715; Appx4398. The Board's decision also violates many basic tenets of claim construction, including finding lexicography without clear evidence.

The Board's determination that the cited prior art disclosed or rendered obvious every claimed limitation of the '804 Challenged Claims, whether under a correct claim construction or the Board's claim construction, also lacks substantial evidentiary support and results from impermissible hindsight. Further, to get to that point, the Board improperly relied on evidence and arguments identified only in Apple's Reply, a practice which this Court and the Supreme Court has admonished.

The Board also failed to properly account for undisputed evidence of objective indicia of nonobviousness. Apple offered nothing to rebut BillJCo's evidence that shows copying by Apple, licensing of the patented technology, and commercial success. Instead, Apple hides behind the absence of evidence. This absence, however, was caused by Apple's failure to submit relevant rebuttal evidence, which was solely within its control, and the lack of procedural mechanisms in the context of an IPR for BillJCo to obtain such information through discovery.

For at least these reasons, discussed in greater detail herein, and those presented in BillJCo's Opening Brief, BillJCo respectfully requests this Court reverse the Board's Final Written Decision.

## II. Apple's Response Fails To Excuse The Board's Legal And Factual Errors

Apple argues in its Response that the Board's FWD was correct. Apple offers little, however, in the form of evidence to support the Board's conclusions. Apple's failure is not surprising because there is a dearth of intrinsic evidence to support the Board's claim construction determinations, and there is not substantial evidence to support the Board's factual determinations. Apple's Response fails to refute BillJCo's demonstration of the Board's numerous reversible errors.

### A. The Board's Claim Constructions Were Wrong

The Board's claim constructions fail to align with the plain and ordinary meaning of the claim terms, the overall claim language, the stated objects of the invention, or the teachings in the '804 Specification, and should be reversed. The Board improperly adopts a claim construction for "transmitting … broadcast unidirectional wireless data record for receipt by a plurality of receiving mobile data processing systems in a wireless vicinity of the sending data processing system" that is not only unsupported by the intrinsic evidence, but conflicts therewith, and for "beacon" that runs afoul of how a person of ordinary skill in the art would understand the term.

That the Board implicitly conducted a claim construction is also readily apparent. In *Google LLC v. EcoFactor, Inc.*, No. 2022-1750, 2024 WL 463231, at *4 (Fed. Cir. Feb. 7, 2024), this Court held that even if a Board or court purports to not construe a claim term, "[i]f the outcome of the analysis of the claim term establishes the scope (e.g., boundaries) and meaning of *the patented subject matter*, the court (or the Board) has most likely construed the claim." (emphasis in original). Here, as well as in the patents in the several companion cases to this case, there can be no question that the outcomes were based on the scope of the patented subject matter, and thus the Board necessarily construed the claims. *See id.*

**1. Transmitting, By The Sending Data Processing System, The Broadcast Unidirectional Wireless Data Record For Receipt By A Plurality Of Receiving Mobile Data Processing Systems In A Wireless Vicinity Of The Sending Data Processing System …**

With regard to the subject claim limitation (referred to as the "transmitting limitation"), the question at hand is which construction comports with the plain and ordinary meaning in view of the overall claim language and most naturally aligns with the '804 Specification – BillJCo's construction that requires the transmission from the sending systems to the mobile systems to be direct ***or*** the Board's construction that permits indirect transmissions, *i.e.*, including a central service or other intermediary system. Any legitimate analysis of the intrinsic evidence readily

establishes that the Board's construction is wrong as a matter of law. Accordingly, the FWD should be reversed.

The transmitting limitation expressly requires that the transmitted record is "wireless," "broadcast," "unidirectional," and "for receipt by a plurality of mobile data processing systems in a wireless vicinity of the sending data processing system …." The transmission from the sending unit for receipt by the plurality of mobile units must be direct as readily established by the overall context of the claim. That transmissions must be direct is also confirmed by the portions of the '804 Specification identified in the parties' briefs, which only discloses direct transmissions, includes no disclosure of indirect transmissions, and expressly teaches a computer architecture (LBX) intended to avoid shortcomings of central service based computer architectures, *i.e.*, environments that utilize intermediate services to transmit data. Opening 23-28. By contrast, the claims and specification include nothing to support the Board's construction arrived at to force fit the prior art onto the claims, and Apple is unable to point to anything.

With regard to the claim language itself, BillJCo's Opening Brief detailed numerous instances where the overall claim language clearly establishes that the transmission of the WDR from a sending system for receipt by the plurality of mobile systems must be direct. Opening 18-23. In its Response, Apple conclusorily disagrees with BillJCo's analysis. In the few instances where Apple provides

something more than just a mere disagreement, even a cursory review of Apple's disputes demonstrate them to be sophistry.

Apple states that "BillJCo first argues that nothing in the claim 'says that the data may be transmitted through an intermediary,' 'suggests the inclusion of an intermediary,' or hints at the idea that some other device receives the data from the sending device, and then retransmits it to the mobile devices…."' Resp. 20. This is true – nothing in the claim language itself suggests, hints at, or even contemplates that transmitting from a sending system to the plurality of mobile devices can be anything but direct. Rather than point to any claim language to the contrary, Apple argues that construing the claim to not include transmission through an intermediary system would improperly "rewrite claim language based on what has been omitted from a claim…." Resp. 21, citing *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1365 (Fed. Cir. 2002).

*Resonate*, however, stands for the unremarkable proposition that it is improper to read limitations from the specification into a claim. *Resonate*, 338 F.3d at 1365. That, however, is not what BillJCo is suggesting. Rather, as demonstrated in BillJCo's Opening Brief, the actual claim language requires direct transmissions and necessarily does not encompass indirect transmissions, *e.g.*, via an intermediary. Opening 18-23.

Next, Apple cites *SiRF Technology, Inc. v. International Trade Com'n*, 601 F.3d 1319, 1330 (Fed. Cir. 2010), for its holding "construing the claim language as encompassing direct and indirect transmitting where '[n]either the claim language ***nor the patent specification*** requires that the communication/transmission be direct.'" Resp. 21 (underlined emphasis in original, other emphasis added). In *SiRF*, this Court specifically noted in sentences immediately following Apple's quote (which Apple omitted): "In fact, indirect communication is specifically contemplated. *See* '651 patent col.3 ll.42-48 ('The link may be a landline, or other direct communications path.... Alternatively, this link may have several parts....') (label numbers omitted)." *SiRF*, 601 F.3d at 1330. Unlike in *SiRF*, Apple identifies nothing from the '804 Specification where a transmission from a sending system to a plurality of mobile systems is contemplated as occurring through an indirect transmission. The corollary to Apple's failure to cite to intrinsic evidence of transmitting via an intermediary system is that Apple also cites to nothing from the '804 Specification to support the Board's construction encompassing a middleman system. To the contrary, a primary object of BillJCo's LBX is to eliminate middleman systems, *i.e.*, an intermediary system. Opening 3-7.

Apple next responds to BillJCo's arguments related to how the claim term "unidirectional" further implicated direct transmission. Resp. 21-22, referencing Opening 19-20. Apple's response does not refute the point made by BillJCo. The

claim specifies the transmitted data is "unidirectional." Apple does not dispute that "unidirectional" means only one direction or that including an intermediary creates multiple directions. Apple instead argues this '804 Specification discussion differentiates a unidirectional transmission (A to B) from bidirectional transmissions (A to B and B to A). While this is correct, this differentiation of unidirectional and bidirectional transmission was merely to provide context for BillJCo's annotated FIG. 1B to which BillJCo added arrows in its Opening Brief. Opening 25-26, *see below*.




Apple hypothesizes that a transmission from A to B and then from B to C is a transmission from A to C in a "transmission direction away from A towards C, and thus there is still a unidirectional transmission even when sending through an intermediary device." Resp. 21-22. The '804 Specification, however, does not describe such a scenario, namely a transmission intended to be sent from A to C via B, and Apple cites to none. *Id.* The '804 Specification teaches only direct

transmissions in FIG. 1B, *i.e.*, A to B, C, D, and E; B to C, D, E, and A; etc. The '804 Specification expressly explains the possible "unidirectional" paths. "When considering that a path 42 comprises two communication paths, ***there are N*(N-1) unidirectional paths for N MSs*** in a network 40." Appx0116, 18:13-15. With regard to the exemplary embodiment shown in FIG. 1B, there are 5 MSs, and therefore 20 unidirectional paths – (5*(5-1) = 5*4 = 20). These 20 possible unidirectional paths for the example of FIG. 1B are shown below.




Appx0039 (annotations added). The annotations depict the possible total 20 different unidirectional paths for 5 MSs, and are color coded to depict the possible "unidirectional" paths for each mobile system, *e.g.*, mobile system A (red) connects to each of mobile systems B (blue), C (green), D (yellow), and E (purple) directly

via the communication paths depicted by red arrows. There is no teaching that suggests a "unidirectional" transmission from one MS to another, *e.g.*, A to C that is made via B or any other intermediary.

As for Apple's argument that the requirement that the data is "wireless" does not preclude an intermediary device, any logic demonstrates this conclusion is wrong because a transmission is not wireless if it travels through wires. Apple asserts "BillJCo's argument ignores that even when an intermediary device is used, there is a transmission 'by the sending data processing system' that is 'for receipt by a plurality of receiving mobile data processing systems,'" and then concludes "it just passes through another device along the way." Resp. 24. To reach this conclusion, Apple summarizes the limitation as merely a transmission "that is" eventually received by a plurality of mobile systems after potentially passing through some indeterminant number of intermediary devices. That, however, is not what the claim says. The claim requires "transmitting, by the sending data processing system, the broadcast unidirectional wireless data record ***for receipt*** by a plurality of receiving mobile data processing systems ***in a wireless vicinity of the sending data processing system***…." Appx0166, 118:24-28. The data sent is also a "***wireless*** data record." The meaning of this claim phrase is plain on its face. The "***wireless*** data record is transmitted by the sending system for receipt by the mobile systems. If there is an intermediary device, the transmission by the sending system is not for receipt by the

mobile systems. Rather, it is for receipt by the intermediary device, which then, at the very least, retransmits the WDR, *i.e.,* it is two transmissions.

Moreover, Apple's attempt to minimize the intermediary device by saying the WDR "just passes through" lacks any common sense. Why would one have a transmission that "just passes through another device along the way" as Apple argues? The additional system costs additional money for equipment, slows transmissions, and creates bottlenecks and failure points. The additional system, whether it is a repeater, range extender, hub, service, or base station controller, logically must also perform a function, *e.g.*, retransmission, such that the data is not just passing through. The issues created by such an intermediary system are exactly those that the '804 Specification explains thoroughly to be something typically found in LBS environments that is remedied by the claimed LBX environment. Opening 3-7.

Apple argues that a transmission to an intermediary device in the wireless vicinity and then to a mobile system outside the sending system's wireless range would violate the requirement that the transmission must be to mobile systems in the vicinity of the sending system. While it is correct the claim requires that the mobile system receiving the WDR is within the wireless vicinity of the sending system, Apple's argument improperly disregards the intrinsic evidence. First, Apple is unable to point to any teachings in the '804 Specification of transmitting to a mobile system

in the vicinity of a sending system via an intermediary device. Apple's argument also incorrectly disregards the '804 Specification denigration of intermediary systems. Opening 3-7. BillJCo's LBX system is expressly designed to avoid "middleman" and "clearinghouse" systems because of bottlenecks and costly data centers. Putting an intermediary device within a wireless vicinity of a sending system to then re-transmit to mobile systems is precisely what BillJCo's LBX system is meant to avoid. Indeed, it makes no logical sense to have data just pass through an intermediary device, *i.e.*, the intermediary device does nothing, where the mobile system receiving the data is in range of the sending system. Moreover, having an intermediary device, such as a repeater or range extender, would necessarily cause the transmission to extend beyond the wireless vicinity of the sending system, which would defeat the '804 Patent's stated purpose of delivering information related to the sending system's location to nearby mobile units. Opening 3-7. The stated purpose further demonstrates that transmissions must be limited to direct transmissions. *See Kaken Pharmaceutical Co., Ltd. v. Iancu*, 952 F.3d 1346, 1352 (Fed. Cir. 2020).

The Board's determination that nothing in the claim language or specification excludes transmission via an intermediary device, while incorrect for the reasons discussed, appears to apply the incorrect standard for claim construction. On October 11, 2018, the PTO published a final rule changing the standard by which claims are construed in IPR proceedings at the Patent Trial and Appeal Board. The final rule

replaced the broadest reasonable interpretation (BRI) standard with the claim construction standard used in the federal courts, namely the standard applied in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). Thus, the Board erred by construing the transmitting step according to what it could possibly include, and not construing the transmitting step in accordance what the '804 Specification actually supports. Indeed, even under the broader "broadest reasonable interpretation" standard for claim construction, a reading of claim language that "is unsupported by the specification" is wrong as a matter of law. *See In re Power Integrations, Inc.*, 884 F.3d 1370, 1377 (Fed. Cir. 2018) (Finding Board incorrectly gave unduly broad construction to claim where Board's construction was not supported by patent specification and disregarded purpose of invention).[2]

Indeed, the abject failure of the Board in the FWD or Apple in its Response to identify ***any*** intrinsic evidence to support that the inventors contemplated indirect transmissions implicates another legal error. If, after applying all other available tools of claim construction, the scope of claim is still unclear,[3] the claim "should be construed to preserve its validity." *Ruckus Wireless v. Innovative Wireless*, 824 F.3d

[2] In this Court's holding that the Board's claim construction was wrong as a matter of law, it specifically noted that the patent at issue in *In re Power Integrations* strove to "eliminate unnecessary components and create a more compact circuit," and the Board's construction that allowed for inclusion of additional components "is inconsistent" with the patent's focus. *Id*.

[3] BillJCo submits the scope is clearly limited to ***direct*** transmissions.

999, 1004 (Fed. Cir. 2016), *citing Phillips*, 415 F.3d at 1327. In *Ruckus*, this Court declined to construe "communication path" to include wireless communications.

> We also have no evidence that the underlying purpose and disclosed solution of the Terry patents might evoke wireless communication in the mind of a skilled artisan. IWS presents no evidence that the inability to execute collision detection protocols over long distances was a problem in wireless communication or that collision detection was even used in that context. We therefore have no reason to believe that the purpose of the patents would have implicated wireless communications within the meaning of "communications path." … Because the specification makes no mention of wireless communications, construing the instant claims to encompass that subject matter would likely render the claims invalid for lack of written description. … The canon favoring constructions that preserve claim validity therefore counsels against construing "communications path" to include wireless communications. *Id*.

This Court's *Ruckus* analysis is particularly instructive to the situation in this case. Here, the FWD failed to identify and Apple's Response also fails to identify any evidence to support that the inventors were in possession of an LBX that utilized indirect transmissions. Instead, the '804 Specification teaches the exact opposite and expressly denigrates use of a central service, *i.e.*, intermediary system. Opening 3-7.

Accordingly, for the reasons discussed in BillJCo's Opening Brief and here, the Board's claim construction of the transmitting limitation was wrong as a matter of law, and the FWD should be reversed.

**2. "Beacon" Limitations**

The plain and ordinary meaning of "beacon" or "beaconing" to persons of ordinary skill in the art is a transmission made with the intent to draw attention to the transmitter. The Board declined to apply this meaning, stating it was based on "extrinsic dictionary definitions." Appx0006-Appx0007. The Board was wrong. This plain and ordinary meaning for "beacon" and "beaconing" was based on Apple's expert's testimony regarding the plain and ordinary meaning. Appx0443. Apple's expert premised his opinions on how the prior art supposedly taught or rendered obvious the Challenged Claims on the plain and ordinary meaning of the claim terms. *Id*. He did not explain what the plain and ordinary meaning of the beacon-related claim terms was in his Declaration (*id*.), but explained his premise during his deposition. Appx4398. Dr. Long explained that whether a transmission is a beacon or not depends on whether it is intended to draw attention to the transmitter. Appx4394-Appx4398.

Despite its own expert's testimony that the hallmark of a "beacon" was the intent of locating the transmitter, Apple argues "[n]otably absent [from the claims] is any indication that the 'beaconing' must be used to locate the transmitter." Resp. 26. Apple's argument makes no sense. Apple based its obviousness contentions in its Petition on the plain and ordinary meaning of the claim terms, and its expert explained that in order for a signal to be a "beacon" pursuant to its plain and ordinary

meaning, this required an intent to draw attention to the transmitter. By reciting "beaconed" and "beaconing," the claim language itself necessarily incorporates drawing attention to the transmitter.

Apple then argues "claim 1 recites separate claim limitations that address location-related features where such features were intended." Resp. 26. These additional "location-related features" are not about beaconing. Rather they pertain to specific uses for the WDR. First, the requirement that the WDR includes "location information associated with the sending data processing system to be used by the each receiving mobile data processing system for determining their own location relative to the location information" enables the locating of the mobile system, not the sending system. Second, "the reference information for further describing the location information associated with the sending data processing system <u>for describing to the each receiving mobile data processing system useful information associated with the sending data processing system</u>"[4] is to provide information associated with the location of the sending system, not the location of the sending system itself. "Beaconed" and "beaconing" and what is done with "location information" are all different requirements of the claim, and Apple's argument that the specifically recited claim terms "beaconed" and "beaconing" can be ignored is wrong as a matter of law. *See Merck & Co. v. Teva Pharmaceuticals USA*, 395 F.3d

---

[4] Underlined portions of the quoted claim were omitted by Apple.

1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

Next, Apple strains to argue "[t]he claim does *not* recite a 'broadcast' or an act of 'broadcasting.' Rather, the claim recites a component referred to as a 'broadcast unidirectional wireless data record' and it is this data record that is beaconed." Resp. 27 (emphasis in original). Apple's argument is specious. By including the modifiers "broadcast," "unidirectional," and "wireless" to "data record," this necessarily gives further requirements to the data record, namely that the data record must be broadcast, unidirectional, and wireless. *See Shire Development, LLC v. Watson Pharmaceuticals*, 787 F.3d 1359, 1365 (Fed. Cir. 2015) (finding "lipophilic" as an adjective that modifies "matrix" which must inform meaning); *see also Bicon, Inc. v. Straumann Co.*, 441 F. 3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim."). Moreover, in a general sense, a broadcast is a type of transmission that may be beaconed and a beacon is something that may be broadcast. Appx4396. However, a broadcast need not be a beacon and a beacon need not be broadcast. Appx4396, 23:7-24. As claimed, the WDR must be both broadcast and a beacon. The Board's failure to give effect to the fact that the claim separately requires that the WDR must be broadcast ***and*** beaconed, as well as be unidirectional and wireless, contributed to its legally erroneous claim construction.

As Apple concedes, the Board found broadcasting and beaconing to be interchangeable. Resp. 28. However, as Apple's expert explained, they are not. The Board's construction thus requires clear evidence to support its apparent lexicography, because a POSITA understands that generally a broadcast is not equal to a beacon. Appx4396, 23:7-24. "To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (internal quotations and citation omitted).

The **only** instance in which the Board referenced the '804 Specification to support its claim construction that departed from Apple's admitted plain and ordinary meaning for "beacon" was the lone statement in the '804 Patent that "[s]ervice(s) associated with antennas periodically *broadcast (beacon)* their reference whereabouts (e.g., WDR information) for being received by MSs in the vicinity." Resp. 27-28, *citing* Appx0164, 113:53-56 (emphasis in original). Based only on the emphasized language, the Board concluded "broadcast" and "beacon" meant the same thing. Like the Board, Apple avoids calling the Board's claim construction as lexicography, yet does not deny BillJCo's argument that it was. As detailed in BillJCo's Opening Brief, evidence to support a clear departure from the plain and ordinary meanings for these claimed terms simply does not exist. Opening 34-36.

To the contrary, "broadcast (beacon)" could just as well suggest broadcasting and beaconing as separate characteristics of the transmission, as is claimed.

In addition to Apple's expert's testimony that beacon and broadcast have different meanings, as a matter of law, "[d]ifferent claim terms are presumed to have different meanings." *Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008). For this reason as well, the Board's determination that a "beacon" was merely a "broadcast" must be reversed.

Lastly, Apple complains that construing a beacon as a transmission intended to direct attention to the transmitter would be vague and ambiguous. As discussed, Apple's expert stated he applied the plain and ordinary meaning of the claim terms for his opinions, and testified that the plain and ordinary meaning for a beacon is one that draws attention to the transmitter. The only reasonable conclusion is that Apple's expert used this definition for beacon as part of his consideration of the prior art. Thus, Apple's own analysis presented in its Petition demonstrates that BillJCo's definition for beacon is not vague and ambiguous.

For the reasons discussed in the Opening Brief and here, the Board's claim construction was wrong as a matter of law, and the FWD should be reversed.

### B. The Board's Factual Determinations Are Not Supported By Substantial Evidence

As the Board notes, "Petitioner relies on Himmelstein for teaching the claimed unidirectional wireless broadcast, and adds Myr for teaching periodic transmission

as a time- and cost-effective method of transmission." Appx0010. For at least the reason that the Board's claim construction for "transmitting" included indirect transmission, and was therefore wrong as a matter of law, there is no evidence to demonstrate Himmelstein taught the limitation. Rather, Himmelstein's system is premised on the same computer architecture described in the '804 Patent, *i.e.,* a LBS System, which requires a middleman system.

Similarly, under the correct claim construction for "beacon," the combination of Himmelstein and Myr fails to disclose the claimed beacon-related requirements, because Apple's expert failed to provide substantial evidence that Myr's transmission is made with the intent to draw attention to the sender, which Apple's expert testified was the plain and ordinary meaning of "beacon."

#### 1. The Prior Art Does Not Disclose Or Render Obvious The "Transmitting" Limitation

The Board relied on Himmelstein for teaching the "transmitting" limitation. Under the correct claim construction requiring direct transmission of a WDR by the sending system for receipt by a plurality of mobile devices, there is not substantial evidence to establish that Himmelstein teaches this requirement.

In its Petition, Apple relied on Himmelstein's disclosure of a base station controller managed architecture. Appx0225-Appx0226. Apple weakly responds to BillJCo's argument that this base station controlled architecture does not teach direct communications, and instead only teaches indirect transmission via the base station

controller, by stating "Himmelstein teaches that packet 50 is transmitted by transceiver 32 of sending mobile unit 16 to 'another mobile device.'" Resp. 31-32, *citing* Appx1770-Appx1771, 2:65-3:1. Apple, however, hides the context of Himmelstein's disclosure by omitting the sentence immediately following its quoted sentence explaining the transmission from mobile unit 16 to another mobile device is by way of the base station controller. *See* Appx1771, 3:1-4 ("The base stations 14 communicate with ***a base station controller 20, which coordinates communications among base stations 14 and mobile units 16***."). Thus, under a correct claim construction that requires a direct transmission to a plurality of mobile devices, there is not substantial evidence to demonstrate Himmelstein's base station controlled architecture teaches or renders obvious this limitation.

Apple's Response focuses more on the Board's reliance on Himmelstein's teaching of a piconet as satisfying the direct transmission requirement. For several reasons, Himmelstein's piconet disclosure is not substantial evidence that Himmelstein discloses the direct transmission requirement.

First, the piconet disclosure is not an "alternative embodiment." Opening 47. Again, Apple takes isolated sentences from Himmelstein outside of the context of the surrounding teachings. When read in context, it is clear the piconet feature is an add-on to the base station controlled architecture, not an alternative.

> Although the present invention has been explained with reference to a plurality of base stations 14 and a base station controller 20, ***the system***

> ***10*[5] *can __also__ use*** technology similar to Bluetooth wireless technology. Using technology such as Bluetooth allows mobile units and base stations ***to communicate through other mobile units and base units (i.e., repeaters)***. ***This permits a wireless interconnect between mobile devices, and between mobile devices and their peripherals***. The mobile devices can form a secure piconet and communicate among the connected devices. Accordingly, using this technology, mobile units 16 can talk directly to other mobile units 16 without the intervention of the base stations 14 and the base station controller 20.

Appx1773, 7:40-52 (underlined emphasis by Apple). The piconet enables mobile devices to communicate with other mobile devices' peripherals, however, the communications are still "through" an intermediary device, namely a "repeater." Moreover, that the piconet is not a substitute for the base station controller based architecture is also evident from this passage. Notably, Apple does not dispute that the piconet is an add-on.

Only after BillJCo's Patent Owner Response pointed out that in a piconet the master controls the transmissions between slaves did Apple argue in its Reply that the master could be the claimed sending system. Appx0558. Apple's contention that a master could be the claimed sending system was not made in its Petition. Appx0225-Appx0226. Also Apple cited no evidence to support its argument. To the contrary, Apple's argument is not supported by any disclosure in Himmelstein (Appx1773 (7:40-52)), and it is also not supported by any expert testimony.

[5] "System 10" is the base station controller environment. Appx1170-Appx1171, 2:59-3:4.

Appx1739-Appx1740. Therefore, there is not substantial evidence to support the Board's conclusion.

Moreover, further claimed requirements demonstrate that there is a complete absence of evidence to support the possibility that the master could even be the ***claimed*** sending system. The Challenged Claims require that the sending system does more than transmit the WDR. The sending system must access identity information, application information, location information, and reference information, prepare a WDR with such information, and maintain a configuration for when to perform beaconing. Appx0166, 117:62-118:23. Apple identified no evidence that a piconet master performs any of these functions. That is because it was not an argument raised in Apple's Petition.[6] Regardless, this failure of proof demonstrates that the FWD must be reversed.

Apple does not contest BillJCo's argument that there is no evidence that a master "broadcasts" the WDR to a "***plurality*** of receiving mobile data processing systems." Instead, Apple only points to Himmelstein's disclosure that "mobile units 16 can talk direct to other mobile units 16" (i.e., can transmit directly to multiple 'mobile units'). Appx 1773 (7:49-52)." "Mobile units 16," however, are not disclosed as being either a master or slave of the piconet. Instead, the only teaching in

[6] Apple is also unable to refute with any evidence BillJCo's argument that there is no evidence that a master "broadcasts" the WDR to a "***plurality*** of receiving mobile data processing systems." Opening 46-47.

Himmelstein of "mobile units 16" is as part of the base station controller architecture, which serves as a middleman for all communications, as shown below.




*FIG. 1*

Appx1763.

"The vehicle communication system 10 generally includes one or more base stations 14, each of which is in wireless communication with a plurality of remote units 16." Appx1770, 2:60-63. "The base stations 14 communicate with a ***base station controller 20, which coordinates communications*** among base stations 14 and mobile units 16. Appx1771, 3:1-4.

Apple's Response further concedes its argument that the master of a piconet could be the sending unit was absent from its Petition. Resp. 35 ("While Apple's Petition did not discuss a 'master' – 'slave' relationship …"). Instead, Apple argues that it is proper rebuttal. It is not. It was always and is always Apple's burden to prove unpatentability. *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800

F.3d 1375, 1378-79 (Fed. Cir. 2015). This burden never shifts. *Id*. To the extent that Apple was relying on Himmelstein's piconet to serve as the basis for the claimed sending data processing system, it was incumbent on Apple to fully explain its basis therefor in its Petition. *See id*. It did not. Instead, Apple failed to reference the master of a piconet at all as being the sending system. Appx0225-Appx0226. Apple's implicit contention that it should be permitted to cite to new arguments after the assertions presented in its Petition are proven wrong is specious. Allowing Petitioners to backfill arguments that they should have addressed in their Petitions is completely at odds with this Court's and the Supreme Court's holdings that the Petition must define the boundaries of the IPR. *See, e.g.*, *SAS Institute Inc. v. Iancu*, 138 S.Ct. 1348, 1355 (2018); *see also Netflix Inc., v. DIVX, LLC*, 84 F.4th 1371, 1377-78 (Fed. Cir. 2023); *Henny Penny Corp v. Frymaster LLC*, 938 F.3d 1324, 1330 (Fed. Cir. 2019). To allow the Board to rely on arguments presented only in the Reply because a patent owner has the opportunity to respond in a Surreply or at oral arguments would be to turn the this Court's and the Supreme Court's directives that the Petition must define the entirety of the IPR on its head.

#### 2. The Prior Art Does Not Disclose Or Render Obvious The Beacon Limitations

As discussed, Apple's expert relied on the plain and ordinary meaning for all the claim terms, and then explained the plain and ordinary meaning for "beacon" relies on the intent that the transmitter is located. *See* § II.A.2 above. Yet, entirely

absent from Myr or Apple's expert's declaration is any showing that the transmission of Myr's "cell phone provider" is to draw attention to the location of the cell phone provider. Opening 48-51. As such, there is not substantial evidence to support the FWD finding that Myr disclosed beaconing under a correct claim construction, and the FWD must be reversed.

Apple relies in its Response on the proposition that the Board found that Himmelstein disclosed beaconing without periodicity. Resp. 41. The Board's reliance on Himmelstein for teaching beaconing at all was improper. This was not an argument raised by Apple in its Petition. Instead, Apple's Petition identifies ***only Myr*** for the beaconing limitation. By relying on Himmelstein for the beaconing limitation, the Board improperly adopted an argument not included in the Petition.

Moreover, the cited portion of Himmelstein in Apple's Response does not disclose drawing attention to the sender. Apple argues in its Response that "Himmelstein discloses that '[s]ince all of the detailed information is available in the packet header 51, the system 10 can provide the speed, direction, and *location* of the other vehicles *in relation to the present vehicle*.'" Resp. 41 (emphasis in original). On its face, this passage speaks to the location of other vehicles in relation to the sender, but says nothing about drawing attention to the sender. Indeed, Apple admits that this passage from Himmelstein was not connected with the "beaconing" limitations by stating "[t]his disclosure was presented by Apple in connection with

the location-related elements of the claims." *Id*. What is important, however, is that it was not presented as an argument for how Himmelstein supposedly disclosed beaconing. It is not the task of the Court to hunt through the record to find arguments not made by a party. As the Seventh Circuit memorably said, appellate judges "are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); cited by *Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365, 1371-72 (Fed. Cir. 2023).

#### 3. Apple's Response Regarding The Failure Of Substantial Evidence To Support A Motivation To Combine Himmelstein And Myr Fails To Refute BillJCo's Arguments

In response to BillJCo's arguments demonstrating that there was not substantial evidence to establish a motivation to combine Himmelstein and Myr, and rather that Myr expressly taught away from a system utilizing Myr's cell phones, Apple does little but repeat the Board's findings. The Board's findings, however, are without logic and not supportable.

Therefore, for the reasons presented in BillJCo's Opening Brief, this Court should reverse the Board's finding of a motivation to combine Himmelstein and Myr.

### C. Objective Indicia Of Non-Obviousness Demonstrates The Patentability Of The Challenged Claims

Apple raises a handful of general responses to the substantial evidence of objective indicia of non-obviousness. One argument is that BillJCo has no evidence connecting the claims to the accused products. Another is that there is not evidence

to support copying because there is no evidence that Apple altered its development of the accused products after receiving BillJCo's technical information. Apple also argues that there is no evidence of commercial success because BillJCo submitted no evidence of Apple's sales. Lastly, Apple argues that there is no evidence that licenses are for a particular patent at issue.

Much of Apple's arguments, which were also part of the Board's disregard for BillJCo's evidence, are because Apple was in control of the evidence and the limited discovery available in an IPR did not allow for BillJCo to obtain it. This Court should put the onus on the Patent Challenger, here Apple, to refute evidence of non-obviousness in such a situation. Regarding copying and commercial success, the Board required BillJCo to identify evidence that Apple's development of the accused product was influenced by having BillJCo's technical evidence, and submit evidence of the number of Apple's sales of the accused product. While the cited cases suggest that the party contesting obviousness must provide this, within the context of an IPR, such a requirement is unworkable. In the context of the limited discovery available in an IPR, and not having had meaningful discovery as in a district court litigation, it is inequitable to require a patent owner to submit evidence that is only accessible to the petitioner. Rather than put the burden of production on the party having access to the evidence, in this case, the Board required BillJCo to submit evidence that Apple kept to itself. This makes no sense.

As for Apple's argument that BillJCo did not connect the accused products to the patent claim, this conclusion is false. Apple disregards BillJCo's claim charts explaining how the accused products infringe. Appx4480-Appx4482. Apple was free to submit evidence of noninfringement, but did not. As such, the evidence that the patent claims read on the accused products is undisputed.

Lastly, with regard to the licenses, Apple's only response is that there were numerous other patents and patent applications included in the licenses, and there is no evidence that the particular claimed inventions here are the reason for the licenses. Apple ignores the fact that each of the patents in the companion cases to this appeal were also included in the licenses. As such, there is evidence that at least several of the patents at issue in the various appeals were the reason for the licenses. This evidence is unrebutted.

## III. Conclusion

For the reasons presented in BillJCo's Opening Brief and here, the Court should vacate the Final Written Decision by the Patent Trial and Appeal Board, reverse the finding of non-patentability of the Challenged Claims, or alternatively, remand for further proceedings consistent with this Court's decision.

Date: February 12, 2024

/s/ Joseph M. Kuo
Brian R. Michalek
Joseph M. Kuo
Elizabeth A. Thompson
Saul Ewing LLP
161 N. Clark Street, Suite 4200
Chicago, IL 60601
Tel: (312) 876-7100
Brian.Michalek@saul.com
Joseph.Kuo@saul.com
Elizabeth.Thompson@saul.com

Brian Landry
Saul Ewing LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
Tel: (617) 912-0969
Brian.Landry@saul.com

Courtland C. Merrill
Saul Ewing LLP
33 South Sixth Street, Suite 4750
Minneapolis, MN 55402
Tel: (612) 225-2943
Courtland.Merrill@saul.com

*Counsel for Appellant, BillJCo, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2348

**Short Case Caption:** BillJCo, LLC v. Apple Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,851 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 02/12/2024

Signature: /s/ Joseph M. Kuo

Name: Joseph M. Kuo

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2023-2348

**Short Case Caption** BillJCo, LLC v. Apple Inc.

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 02/12/2024

by ☐ U.S. Mail ☐ Hand Delivery ☑ Email ☐ Facsimile
☐ Other: ____________

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Douglas Hallward-Driemeier | douglas.hallward-driemeier@ropesgray.com |
| James Batchelder | james.batchelder@ropesgray.com |
| James L. Davis | james.l.davis@ropesgray.com |
| Cassandra Roth | cassandra.roth@ropesgray.com |
| Brian LeBow | brian.lebow@ropesgray.com |

☐ Additional pages attached.

Date: 02/12/2024

Signature: /s/ Joseph M. Kuo

Name: Joseph M. Kuo